# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 8, 2007 Session

## STATE OF TENNESSEE V. TONY GALTELLI, JOHN B. GARDNER, AND VANCE PLUMOFF

### Direct Appeal from the Criminal Court for Shelby County
No. 04-06282    W. Fred Axley, Judge

---

### No. W2006-00526-CCA-MR3-CD  - Filed February 13, 2008

---

Appellees, Tony Galtelli, John Gardner and Vance Plumoff, all West Memphis, Arkansas police officers, were indicted for reckless homicide by the Shelby County Grand Jury after a high-speed chase. The chase resulted in the shooting death of Kelly Allen, a passenger in the vehicle involved in the chase. The district attorney general denied pretrial diversion for each officer. Subsequently, Appellees sought relief from the denial of pretrial diversion by filing a petition for writ of certiorari in the trial court. The petition alleged that the district attorney general abused his discretion by denying pretrial diversion. The trial court granted the writ of certiorari, ordering the district attorney general to place Appellees on pretrial diversion. The State sought both an interlocutory appeal and an extraordinary appeal. Both requests were denied. The State subsequently sought and was granted permission to file a late notice of appeal pursuant to Tennessee Rules of Appellate Procedure 3. On appeal, the State asserts that the trial court improperly concluded that the district attorney general abused his discretion by denying pretrial diversion and that the trial court erred by ordering the district attorney general to enter a memorandum of understanding to place Appellees on pretrial diversion. After a review of the record, we conclude that even though the trial court properly determined that the district attorney general abused his discretion by denying pretrial diversion, the trial court improperly ordered the district attorney general to place Appellees on pretrial diversion where the district attorney general failed to consider all relevant factors in denying diversion. According to *State v. McKim*, 215 S.W.3d 781 (Tenn. 2007), the trial court should have reversed the district attorney general's denial of diversion and ordered the district attorney general to consider all the relevant factors in regard to granting or denying the applications for diversion. Therefore, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed in Part; Reversed in Part and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Henderson, Assistant District Attorney General, for the appellant, State of Tennessee.

Steven E. Farese, Jr., Ashland, Mississippi, for appellee, Tony Galtelli; Robert Brannon, Memphis, Tennessee, for appellee, John Gardner; and William D. Massey and Lorna D. McClusky, Memphis, Tennessee, for appellee, Vance Plumoff.

# OPINION

## Factual Background

On July 18, 2004, in West Memphis, Arkansas, Lieutenant Joseph Fortham of the West Memphis Police Department pulled over a 1992 Honda Accord for having a broken headlight. The car contained the driver, Donald Rickard, and the passenger, Kelly Allen. At some point during the routine traffic stop, Lieutenant Fortham asked the driver to step out of the vehicle. Rather than comply, the driver sped off at a high rate of speed.

A pursuit of the vehicle ensued that took the vehicle into Memphis, Tennessee. The pursuit ended with the shooting deaths of both the passenger and the driver. According to Appellees Vance Plumoff and Tony Galtelli, during "the pursuit of two persons in an automobile[;] [t]he driver assaulted officers on more than one occasion. On the last occurrence shots were fired and the passenger was fatally injured, resulting in the charges brought in this case."[1]

According to the summary of the facts supporting the indictment, the facts of the case are as follows:

> [D]uring a routine traffic stop[,] Lt. Fortham noticed that the windshield was broken and felt the driver was acting suspiciously. At that time, Lt. Fortham asked the driver to step out of the vehicle. Instead of getting out of the vehicle[,] the driver fled at a high rate of speed.
>
> Lt. Fortham gave chase and reported on his car radio that he had a runner. Several other police cars in the area, including the vehicles occupied by Officers John Gardner, Vance Plumhoff [sic], and Tony Galtelli, gave chase. At this time, the officers knew of no felony that had been committed; however, they pursued the vehicle at an extremely high rate of speed going east on I-40, [h]eaded out of Arkansas and toward the Tennessee state line. At this point, one of the chase officers

---

[1]This summary of the facts was taken from Appellee Plumoff's and Appellee Galtelli's applications for pretrial diversion.

reported that the Honda driver had attempted to ram his car. Lt. Fortham then stated over the radio that the driver had committed a felony. . . . The officers had no reason to believe the female passenger had committed any type of crime. However, they continue[d] to pursue the fleeing vehicle at a high rate of speed in a dangerous pursuit without regard for her safety.

The pursuit continued across the I-40 [b]ridge into Memphis, off of I-40, and northbound onto Danny Thomas [Boulevard]. As the driver attempted a turn off of Danny Thomas onto Jackson Avenue, he lost control of the vehicle and the vehicle came to rest on the north side of the business at 653 Danny Thomas. At this time, Officers Plumhoff[sic], Evans, and Gardner attempted to block the vehicle with their squad cars while several other officers including Galtelli exited their squad cars. When Officer Evans exited his vehicle and approached the Honda attempting to open the door, the vehicle pulled off striking Officer Evans's hand. Then Officers Plumhoff [sic], Gardener. [sic] and Galtelli approached the Honda and began to discharge their weapons into the vehicle. The driver, although struck by several bullets, was able to drive the vehicle away as the three officers continued to discharge their weapons at and into the vehicle. The Honda continued eastbound on Jackson until the driver lost control, struck a brick wall, went airborne, and struck the residence at 778 Jackson. The vehicle struck the house so hard that the car battery was dislodged and came to rest on top of the house at the edge of the roof.

Both the driver and the passenger of the vehicle were found to be deceased. The driver was Donald Rickard and the passenger was Kelly Allen. Mr. Rickard had approximately seventeen gunshot wounds. Ms. Allen had one gunshot wound to the back of her head and died from both the gunshot and the trauma caused by the impact of the vehicle crash.

Appellees Tony Galtelli, John Gardner and Vance Plumoff of the West Memphis, Arkansas Police Department were indicted by the Shelby County Grand Jury in September of 2004 for reckless homicide for the death of the passenger of the vehicle.

Each Appellee individually filed a request with the district attorney general for pretrial diversion. The district attorney general individually denied each request for pretrial diversion.

*Applications for Pretrial Diversion*

Each application for pretrial diversion provided the personal information requested about each Appellee on the standardized form for pretrial diversion provided to Appellees by the district attorney general's office.

Vance Plumoff's application revealed that he was born in 1970 and was married with one child. At the time of the incident, he had worked with the West Memphis Police Department for seven years. Appellee Plumoff is a high school graduate with some college education and a reported

-3-

IQ of 170. Appellee Plumoff served for four years in the United States Air Force, completing a tour of duty in Kuwait during Operation Enduring Freedom. Appellee Plumoff received several awards and medals as a result of his military service, including: the Air Force Achievement Medal, the National Defense Service Medal, the Air Force Overseas Long Tour Ribbon, the Southwest Asia Service Medal, the Air Force Longevity Service Award, the Armed Forces Expeditionary Medal, the Armed Forces Reserve Medal, the Small Arms Expert Marksmanship Ribbon, the Air Force Training Ribbon, the Air Force Overseas Short Tour Ribbon, the Kuwait Liberation Medal Saudi Arabia, Kuwait Medal Kuwait, Air Force Outstanding Unit Award, the Air Force Good Conduct Medal, and the Air Reserve Force Meritorious Service Medal. He was honorably discharged from the Air Force at the rank of Staff Sergeant and, at the time of the application for diversion, continued to be a member of the National Guard. Appellee Plumoff had no prior criminal history.

John Gardner's application revealed that he was born in 1978 and, at the time of the application, was married with no children. Appellee Gardner is a high school graduate with some college education. At the time of the incident, he had worked for the West Memphis Police Department for approximately two years. Prior to working as a police officer for West Memphis, Appellee Gardner was a cadet with the Shelby County Sheriff's Office for three-and-a-half years, a security officer for two years, and a diesel mechanic/technician for three years. Appellee Gardner asserted that he belonged to several organizations in high school, including Beta Club. He was a member of the school wrestling team. Appellee Gardner also held membership in the Professional Association of Diving Instructors ("PADI"), was involved with the Shelby County Sheriff's Department Explorer Program for seven years, and participated in a small group at his church. Appellee Gardner had no prior criminal record.

Appellee Galtelli's application for pretrial diversion indicates that he was born in 1980 and, at the time of the application, was married with no children. Appellee Galtelli has a high school education and a degree in criminology and sociology from Arkansas State University. Appellee Galtelli began working for the West Memphis Police Department in April of 2004, approximately three months prior to the incident. Prior to his police career, Appellee Galtelli was an office assistant for four years at a welding and industrial business. Appellee Galtelli held several other odd jobs prior to being an office manager and had no prior criminal record. Appellee Galtelli was involved in several varsity sports in high school and was a member of the Pep Club and Beta Club. He also participated in the Shelby County Sheriff's Department Explorer Program and was a member of the Catholic Church.

*Denial of Diversion*

The district attorney general denied the applications for diversion in three separate letters. In denying Appellee Plumoff's and Galtelli's applications for diversion, the district attorney general claimed that their statement of the events was "more self-serving than insightful." In regards to Appellee Gardner's application, the district attorney general stated that the videotapes of the incident did not support his request for the "extraordinary" relief of pretrial diversion.

The district attorney general noted that all three Appellees were "eligible for diversion" according to T.C.A. § 40-15-105 and that the lack of prior criminal history "weigh[ed] in favor" of the grant of pretrial diversion.

In the section of the denial letter entitled "social history," the district attorney general recapped the information provided in each Appellee's application and then commented that "weight has been given to both the positive and negative aspects of [their] social history." The District attorney general makes the identical statements with regard to Appellees' prior work history and mental condition.[2]

As to the facts of the case, the district attorney general concluded that "[t]he facts of this case showing the reckless behavior of the defendants and their disregard for innocent citizens weigh heavily against granting them the extraordinary relief of Pre-Trial Diversion."

The district attorney general concluded by noting that there was a "need" for general and specific deterrence and that the "interest of justice" weighed against diversion, stating:

> It is extremely important that people of the community feel they are protected by their law enforcement officers and not threatened by them. Therefore, it is important to deter this type of activity by police officers. The community should be guaranteed that they are not endangered by police officers in the performance of their duties if they are innocent of any crime. Crimes committed by police officers that threaten or undermine "the vitality of our judicial system should neither be countenanced nor rewarded with remedial measures such as pre-trial diversion." *State v. Barry Hughes*, 1996 Tenn. Crim. App. LEXIS 280, No. 03C01-410-CR-00454, 1996 WL 223579, at *1 (Tenn. Crim. App., Knoxville, May 3, 1996).

> Also, there is a need to deter [these Defendants] from feeling that [they have] done nothing wrong and that it is permissible to engage in this type of behavior since [they are] law enforcement officer[s]. If diversion was granted, and the record expunged, [these Defendants] would feel that [their] actions were justified and vindicated. [They] would feel [they] could engage in this type of behavior in the future with impunity.

> The need for deterrence weighs heavily toward denying the Defendants'[s] application for pretrial diversion.

> . . . .

---

[2]On the denials of Appellee Plumoff's and Appellee Galtelli's applications for diversion, the district attorney general referred to the social history, work history and mental condition of "Mr. Gardner." It is unclear whether the district attorney general confused these applicants with Appellee Gardner or merely transposed the names of the applicants in the denial letters.

The reckless nature of the offense resulting in the death of the victim, the fact that the [Defendants were] acting under the color of law, the fact that citizens should feel protected by and not threatened by law enforcement, the damage that this type of criminal behavior does to the judicial system, the need to put law enforcement on notice that this type of behavior will not be tolerated and the need to deter this type of behavior, the need to insure the community that this type of behavior will not be tolerated when weighed against the Defendant[s'] social history and work history indicate that pre-trial diversion is not the appropriate remedy in this case and would not be in the interest of justice.

In denying diversion, the district attorney general concluded:

Although some factors should and do appear to weigh in favor of the Defendant[s'] application for the extraordinary relief of pre-trial diversion, the State has received no documentation to support any of the defendant[s'] claims to be a good candidate for pre-trial diversion . . . .[3] The Defendant[s] furnished the State with no proof of education or prior employment. It is true that the charge is divertible, the Defendant[s] [have] not been on diversion before, and [they have] no prior record that would disqualify [them] from diversion consideration. However, the totality of these factors does not warrant granting the extraordinary relief of pre-trial diversion.

The fact that the Defendant[s] acted in an extremely reckless manner without regard for innocent people resulting in the death of the victim, that the defendant[s] should be held to a higher standard since [they] were acting under the color of law as an authority figure and should have known [their] behavior was reckless, the harm done to the judicial system when law enforcement officers violate the law, the need to deter criminal behavior by police officers, the need to send the right message to both law enforcement and the community, and the fact that justice would not be served by placing the Defendant[s] on diversion are all factors that weigh against granting the Defendant[s'] application[s] for pre-trial diversion.

The positive traits of [these Defendants] are not sufficient to outweigh the duty that this office has to protect the citizens of this community. After considering and weighing all of the factors of this application both positive and negative, it is my opinion that the negative aspects far outweigh the positive aspects and indicate that this office should not grant the Defendant[s'] application[s] for pre-trial diversion.

Subsequent to the denial of diversion, each Appellee sought relief from the trial court via common law writ of certiorari, alleging that the district attorney general abused his discretion in denying the applications for diversion.

---

[3] As to Appellee Plumoff, the district attorney general noted that they had received his "Certificate of Release or Discharge from Active Duty."

The trial court entered an order determining that the district attorney general "abused his discretion" and that there was "not substantial evidence to support the district attorney general's denial of diversion." Specifically, the trial court determined that the district attorney general did not "articulate defendants'[s] amenability to correction as a factor. Nor d[id] the State explain how other factors render Defendant[s] not amenable to correction. Without such explanation, the court cannot infer whether the State considered this factor. The failure to consider this factor constitutes an abuse of discretion." Further, the trial court determined that the State did not make clear whether it considered the social history, prior work history or mental condition of each Appellee and did not explain how the circumstances of the offense and the need for deterrence outweighed the other factors. The trial court also pointed out that the State "did not consider defendants'[s] attitude, behavior since arrest, home environment, current drug usage, general reputation, marital stability, family responsibility, and attitude of law enforcement." Thus, the trial court concluded there was "not substantial evidence to support the district attorney general's findings supporting denial of diversion."

As a result of the trial court's findings of fact and conclusions of law, the trial court granted the petitions for writ of certiorari and ordered the district attorney general to place Appellees on pretrial diversion pursuant to T.C.A. § 40-15-105.

Subsequently, the State sought an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court denied the request. The State then sought relief via an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure. This Court denied the requested relief, and the State pursued an appeal as of right.[4] On appeal, the State contends that the trial court improperly concluded that the district attorney general abused his discretion and improperly ordered the district attorney general to enter a memorandum of understanding placing Appellees on pretrial diversion.

*Analysis*

The Pretrial Diversion Act provides a means of avoiding the consequences of a public prosecution for those who have the potential to be rehabilitated and avoid future criminal charges. T.C.A. § 40-15-105. Those who are statutorily eligible are not presumptively entitled to diversion;

---

[4]In the order denying the extraordinary interlocutory appeal this Court noted that Rule 3 of the Tennessee Rules of Appellate Procedure was the appropriate vehicle for obtaining appellate review of an order directing a district attorney to place a criminal defendant on pretrial diversion. In support of this assertion the Court cited three cases: *State v. Skidmore*, 15 S.W.3d 502 (Tenn. Crim. App. 1999); *State v. Theresa Hallsford*, No. M2002-00959-CCA-R3-CD, 2002 WL 31852858 (Tenn. Crim. App., at Nashville, Dec. 20, 2002); and *State v. Robbie Carriger*, No. E2000-00823-CCA-R3-CD, 2000 WL 1861823 (Tenn. Crim. App., at Knoxville, Dec. 20, 2000). While these appeals came to this Court pursuant to Rule 3, the question of whether an appeal of right is available to the State under circumstances presented by this case was never questioned or discussed. In view of the fact that this Court's order directed the State to proceed under Rule 3, we accept jurisdiction of this case and will address the merits of the appeal. We note however that a close reading of Rule 3(c), governing appeals by the State in criminal actions, does not explicitly provide for an appeal of right from an order to grant diversion. *See* Tenn. R. App. P. 3(c).

rather, it is extraordinary relief for which the defendant bears the burden of proof. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999); *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993).

Tennessee Code Annotated section 40-15-105 provides that candidates who satisfy certain criteria may be eligible for pretrial diversion.[5] "The self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction." *Pace v. State*, 566 S.W.2d 861, 868 (Tenn. 1978).

The decision to grant pretrial diversion rests within the discretion of the district attorney general. T.C.A. § 40-15-105(b)(3); *see Curry*, 988 S.W.2d at 158. The Tennessee Supreme Court has held that in determining whether to grant pretrial diversion, the district attorney general "has a duty to exercise his or her discretion by *focusing on a defendant's amenability for correction* and by considering all of the *relevant* factors, including evidence that is favorable to a defendant." *State v. Bell*, 69 S.W.3d 171, 178 (Tenn. 2002) (emphasis added); *see also State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). Specifically, district attorneys should consider the following factors:

> [1] circumstances of the offense; [2] the criminal record, social history and present condition of the defendant, including his mental and physical conditions where appropriate; [3] the deterrent effect of punishment upon other criminal activity; [4] defendant's amenability to correction; [5] the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and defendant; and [6] the applicant's attitude, behavior since arrest, prior record, home environment, current drug usage, current alcohol usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.

*State v. Markham*, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988); *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting *Markham* but excluding "current alcohol usage").

Although an important factor for consideration, "[t]he focus on amenability to correction is not an exclusive one." *State v. Carr*, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). Deterrence of both the defendant and others is also a proper factor to consider. *Hammersley*, 650 S.W.2d at 354. In fact, the circumstances of the crime and the need for deterrence may outweigh other applicable factors and justify the denial of pretrial diversion. *State v. Lutry*, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996); *Carr*, 861 S.W.2d at 855. The district attorney's analysis must be conducted "on a case-by-case basis, assigning due significance to all relevant factors." *Markham*,

---

[5]Under the statute, a "qualified defendant" is one who has not already been granted pretrial diversion; does not have a prior misdemeanor conviction for which a sentence of confinement is served; does not have a prior felony conviction within a five-year period after completing the sentence or probationary program for the prior conviction; and the offense for which the prosecution is being suspended cannot be a Class A or Class B felony, nor can it be certain Class C felonies (certain sexual offenses, driving under the influence of an intoxicant, vehicular assault or, beginning January 1, 2008, vehicular homicide). T.C.A. §§ 40-15-105(a)(1)(B)(i)(a)-(c).

755 S.W.2d at 853. Accordingly, "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." *Curry*, 988 S.W.2d at 158.

When denying an application for pretrial diversion, the district attorney general must clearly articulate the specific reasons for denial in the record in order to provide for meaningful appellate review. *Hammersley*, 650 S.W.2d at 355. Specifically, the Supreme Court has provided that a district attorney general's consideration of all of the relevant factors must:

> [E]ntail[ ] more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test. If the attorney general bases his decision on less than the full complement of factors enumerated in this opinion he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration.

*State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989), *overruled in part on other grounds by State v. Yancey*, 69 S.W.3d 553, 559 (Tenn. 2002).

In the case herein, the trial court determined that the district attorney general failed to consider all of the relevant factors, including amenability to correction, prior to the denial of pretrial diversion. Recently, in *State v. McKim*, 215 S.W.3d 781 (Tenn. 2007), the supreme court granted extraordinary appeal in a similar case in order to determine the effect of a district attorney general's consideration of an irrelevant factor in deciding whether to grant pretrial diversion. The court also clarified when an interlocutory appeal from a denial of pretrial diversion should be granted. The defendant in *McKim* was indicted for criminally negligent homicide following the death of his daughter after the defendant left her in his car on a hot summer day. The district attorney general denied pretrial diversion in part on the basis that diversion in this defendant's case would be an "aberration of the law." *Id.* at 787. The defendant sought review of the denial in the trial court, and the trial court refused to determine that the district attorney general had abused his discretion. The defendant applied for an extraordinary appeal in this Court. This Court denied the request. The Supreme Court granted review and determined that the district attorney general abused his discretion by relying on an irrelevant factor in denying pretrial diversion. The court found it "clear that [the district attorney general] did not focus on the defendant's amenability to correction in determining whether to grant diversion but rather on the nature and circumstances of the offense and its tragic consequence." *Id.* In other words, the district attorney general "considered a factor not relevant to his determination of whether to grant pretrial diversion" and "tainted his decision-making process as to constitute an abuse of discretion." *Id.* at 788. As a result, the supreme court determined that the trial court improperly denied the petition for writ of certiorari and reversed the trial court's order affirming the denial of pretrial diversion. *Id.* at 793. The court made clear that:

> [I]f the trial court determines that the district attorney general has failed to consider and weigh *all* relevant factors, the trial court must reverse the district attorney

general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination.

*Id.* at 788 (citing *Bell*, 69 S.W.3d at 180) (emphasis added). The court noted that according to Tennessee Code Annotated section 40-15-105(b)(3), if the trial court determines that the district attorney general has considered *all* relevant factors, and no irrelevant ones, and has nonetheless committed an abuse of discretion in denying diversion, the trial court may order the prosecutor to place the defendant on pretrial diversion. *McKin*, 215 S.W.3d at 788 n.3.

Our review of the district attorney general's written denial makes clear that he did not focus on Appellees' amenability to correction in determining whether to grant diversion but rather on the nature and circumstances of the offense and deterrence. The district attorney general's denial focused on the "reckless behavior of the defendants and their disregard for innocent citizens." In the denial, the district attorney general stated that weight was given to both the positive and negative aspects of Appellees' social history, work history, and mental condition without stating what aspects were deemed positive and what aspects were deemed negative. Further, the district attorney general failed to weigh the relative importance of these items when viewed in totality with the applications for diversion as a whole. We agree with the trial court that the district attorney general's references to Appellees' social history, work history, and mental condition are ambiguous at best. The record supports the trial court's conclusion that it is unclear whether the district attorney general actually considered these factors where the denial of pretrial diversion was couched in such ambiguous and uncertain language. Moreover, the record supports the trial court's determination that the district attorney general failed to consider all relevant factors prior to making a decision about pretrial diversion for each Appellee. Thus, we conclude that the trial court properly determined that the district attorney general abused his discretion in denying diversion.

Our analysis does not end at that point, however. Where the prosecutor denies a defendant's application for pretrial diversion, the defendant may petition the trial court for a writ of certiorari in accordance with Tennessee Code Annotated section 40-15-105(b)(3). As noted in *McKim*, if the trial court determines that the district attorney general has failed to consider and weigh *all* relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination. *McKim*, 215 S.W.3d at 788 (citing *Bell*, 69 S.W.3d at 180). In other words, when the trial court herein concluded that the district attorney general failed to consider the Appellees' "amenability to correction," the trial court properly recognized that the district attorney general had abused his discretion in evaluating Appellees' applications by failing to consider all of the factors relevant to pretrial diversion. Thereupon, the trial court should have reversed the district attorney general's decision and remanded the matter of Appellees' diversion applications for further consideration. *See id.* Accordingly, the trial court's decision that the district attorney general abused his discretion is affirmed. However, the trial court's order that the district attorney general place Appellees on pretrial diversion is reversed. On remand, the trial court should remand the matter of diversion to the district attorney general's office and instruct the district attorney general to properly evaluate each application for diversion, weighing and measuring all relevant factors before determining suitability for diversion.

*Conclusion*

The trial court's order reversing the denial of pretrial diversion is affirmed. However, the trial court's order directing the district attorney general to place Appellees on pretrial diversion is reversed. This matter is remanded for further proceedings consistent with the opinion. Specifically, the trial court shall reverse the decision of the district attorney general's office denying pretrial diversion and remand this matter for a proper evaluation of Appellees' applications for diversion.

_____
JERRY L. SMITH, JUDGE