IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2008

## STATE OF TENNESSEE v. KELLY HILL

**Appeal from the Circuit Court for Maury County**
**No. 16869    Robert L. Jones, Judge**

_____

**No. M2008-01344-CCA-R10-CD - Filed March 30, 2009**

_____

The defendant, Kelly Hill, by means of a Rule 10 interlocutory appeal, seeks review of the Maury County Circuit Court's ruling that the assistant district attorney general did not abuse his discretion in denying her application for pretrial diversion. Following review of the record, we conclude that the relevant factors were properly considered by the assistant district attorney general and that no abuse of discretion occurred. Accordingly, we affirm the trial court's denial of the defendant's application for diversion.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Claudia S. Jack, District Public Defender, and Sharon D. Aizer, Assistant Public Defender, for the appellant, Kelly Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The underlying facts of the case, as stated in the State's Response to Application for Pretrial Diversion, are as follows:

In late January, 2006, Todd Crowell who is employed by CVS Pharmacies as a loss prevention investigator, noticed that the CVS Pharmacy located in Columbia, TN was showing a "loss" in their amounts of Hydrocodone (commonly called Lortab). Lortab is a powerful pain reliever, a schedule III controlled substance that

is commonly abused and sold illegally on the streets of Columbia. After further investigation at the CVS Pharmacy in Columbia (hereinafter referred to as CVS) Mr. Crowell received information that Kelly Hill (defendant), the lead pharmacy technician, may have [had] something to do with the shortage of Lortab. On 3-28-06, Mr. Crowell interviewed Ms. Hill. During the interview, Ms. Hill did admit to forging prescriptions for Lortab and Promethazine. Ms. Hill admitted to faking Doctor call-ins for prescriptions under her grandmother's (Marjorie Potts) and her cousin's (Ashley Gregory) names, then having the prescriptions filled. Ms. Hill stated that she would commonly "call in" a large amount, have that amount filled, then edit the amount in the computer to a much smaller amount so that the prescription would be cheaper. Ms. Hill evidently did pay for the prescriptions. At least the co-pay amounts for the reduced number of pills. Ms. Hill also admitted to stealing full bottles of Lortab from the shelves of the pharmacy. Ultimately, Ms. Hill admitted to passing one-hundred twenty-two (122) fraudulent prescriptions and stealing bottles of Lortab, with these actions resulting in the fraudulent receipt of approximately 10,400 Lortabs. The amount of Lortabs that the pharmacy records show as taken through the fraudulent prescriptions is 4,565. Of course, this number would be the "reduced" number after being edited by Ms. Hill. When asked if any of the pills were sold, Ms. Hill stated that she gave approximately 200-250 to her boyfriend who would sell them. If the admitted amount of 10,400 is correct, that translates to an average of 452 illegally obtained Lortabs per month, that Ms. Hill released into our community either for her illegal use or, more likely, for sale.

Based upon these facts, a Maury County grand jury returned an indictment charging the defendant with 122 counts of fraudulently obtaining prescription drugs. Subsequently, the defendant filed an application for pretrial diversion, which the State denied. The defendant then filed a writ of certiorari with the trial court, and the trial court affirmed the decision of the State. The defendant then filed a Rule 3 appeal with this court. This court, in a written order, held that the appeal was not properly before the court, but granted a Rule 10 application for extraordinary appeal.

**Analysis**

On appeal, the defendant contends that the trial court erred in its determination that the district attorney general did not abuse his discretion in denying her request for diversion. Specifically, she contends that the district attorney general failed to consider all relevant factors, failed to enumerate the evidence considered, and focused on the nature and circumstances of the offenses rather than the defendant's amenability to correction.

A defendant is statutorily eligible for pretrial diversion if the defendant has not previously been granted diversion, does not have a disqualifying prior conviction, and is seeking pretrial diversion for an offense that is not a Class A or Class B felony, certain Class C Felonies, a sexual offense, driving under the influence, or vehicular assault. T.C.A. § 40-15-105(a)(1)(B)(i) (2006); *State v. McKim*, 215 S.W.3d 781, 786 (Tenn. 2007); *State v. Bell*, 69 S.W.3d 171, 176 (Tenn. 2002).

Nonetheless, statutory eligibility for pretrial diversion does not entitle a defendant to diversion. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999). Rather, the district attorney general has the sole discretion to determine whether to grant pretrial diversion to one who meets the strict statutory requirements. *Id.* at 176 (citing *Curry*, 988 S.W.2d at 157). In determining whether to grant pretrial diversion, the district attorney general "has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant." *Bell*, 69 S.W.3d at 178; *see also State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). Any factors tending to reflect accurately upon whether the applying defendant will or will not become a repeat offender should be considered. *Hammersley*, 650 S.W.2d at 355. Our supreme court has held that:

> [a]mong the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of the defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant.

*Id.* Furthermore, the prosecutor may consider the need for general deterrence. *McKim*, 215 S.W.3d at 787 (citing *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)). However, the circumstances of the offense and the need for deterrence "cannot be given controlling weight unless they are 'of such overwhelming significance' that they [necessarily] outweigh all other factors." *Id.* (quoting *State v. Markham*, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). Our supreme court has recognized that "the responsibility placed upon prosecutors to pick and choose among the lot [of applicants for pretrial diversion] based upon a particular candidate's amenability to rehabilitation and recidivism requires the exercise of unusual powers of discrimination." *Hammersley*, 650 S.W.2d at 353.

If a prosecutor denies pretrial diversion, the denial must be written and must articulate the factors considered, as well as the weight attributed to each factor. *Curry*, 988 S.W.2d at 157. "This requirement entails more than an abstract statement in the record that the district attorney general has considered [all relevant] factors." *McKim*, 215 S.W.3d at 787 (quoting *State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989)). A district attorney general's failure to consider and articulate all relevant factors constitutes an abuse of discretion. *Bell*, 69 S.W.3d at 178. Additionally, a district attorney general must avoid relying upon irrelevant factors when denying diversion. *Id.*

In the event pretrial diversion is denied, a defendant may appeal by filing a petition for a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). The prosecutor's decision is "presumptively correct," *Curry*, 988 S.W.2d at 158, and, on review, the trial court is limited to examining only the evidence considered by the district attorney general and must determine whether the prosecutor has abused his or her discretion. *Bell*, 69 S.W.3d at 177. That is, "the trial court should examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence." *State v. Yancey*, 69 S.W.3d 553, 559 (Tenn. 2002). The trial court must focus on the district attorney general's methodology rather than

the intrinsic correctness of his or her decision, and the trial court should, therefore, not engage in reweighing the evidence considered by the district attorney general. *McKim*, 215 S.W.3d at 788 (citing *Yancey*, 69 S.W.3d at 559). If the trial court determines that the district attorney general has failed to consider and weigh all relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination. *Id.* (citing *Bell*, 69 S.W.3d at 180). On appeal, this court must determine whether the trial court's decision is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

In his four-page response denying diversion, the district attorney general stated the following:

> The State has considered the objective factors dictated by *Herron*, *Hammersly*, *Curry*, and *Marcum*, as well as Defendant's social history, her physical and mental condition, her prior record, her amenability to rehabilitation, the nature and facts of the case as well as her application for diversion and other factors as [hereinafter] set out.

> Defendant's Personal History: The defendant is a twenty-eight year old female, divorced, with two children of the ages of eight and one year. The defendant does not have any prior criminal convictions in her history. The State considers this factor in favor of the defendant. Other than the almost five year period the defendant worked for CVS Pharmacies (the victim in this case), the defendant's work history is somewhat sporadic. This factor is considered against the defendant, however the State does not place great weight on this factor. The defendant did not report any physical, mental health or substance abuse issues to the District Attorney's Office as part of her application for Diversion. This factor is considered against [ ]the defendant. While it is good that the defendant apparently does not have any addictions, this factor weakens her credibility when she reported that only a small portion of the drugs taken were sold. Either she is not forthcoming about her drug usage or she is dishonest in her statement when she stated that only 200-250 of the approximately 10,400 lortabs taken were sold.

> (2)  Facts of the Case:  . . . .
> Unfortunately, Maury County shares a distinction with too many counties in Tennessee. That distinction is that there is a serious drug problem in our community. Lortab is a drug that is abused with frequency here and is illegally sold on the streets with regularity. Since the defendant did not relate that she has any addiction to any substance and indicated in her application that the use of drugs was not a factor in the commission of the offense, the logical conclusion is that her actions were carried out with the intent to obtain these substances to sell illegally. It is obvious to the State that [the

-4-

defendant's] statement made to Mr. Crowell and in her application show no remorse and, at best, an attempt to minimize her actions.

This Assistant District Attorney has prosecuted at least 99% of all prescription fraud cases in Maury County since October, 2000 and can say that this case is, by far, the most egregious seen in this county since October 2000. Based on the foregoing, this factor is considered strongly against the defendant and is given great weight.

(3)     Nature of the Offense: [The defendant] is indicted for one-hundred-twenty-two (122) counts of Prescription Fraud allegedly occurring between April 28, 2004 and March 28. 2006. Each count is a class D felony. The proof shows that [the defendant's] actions began slowly, with only one or two prescription[s] per month, but quickly escalated into blatant, unbridled activity resulting in as many as fourteen (14) fraudulent prescriptions in one month. Add to that, her theft of whole bottles of Lortabs from the shelves. She used her grandmother's and cousin's identities, without their knowledge, and the names of three different doctors to carry out her actions. She falsified computer records, as well as prescription records. Her actions were obviously calculated, involved various levels of deceit and absolutely show that [the defendant] had absolutely no regard for any pecuniary loss sustained by CVS and a complete disregard for effects that over 10,000 Lortabs could have on her community.

Based on the foregoing, this factor is considered against [the defendant] and is given great weight. The fact that [the defendant] did cooperate to the extent of giving a statement to Mr. Crowell is considered for her. However, the nature and facts of these offenses greatly outweighs this.

(4)     The Needs and Interests of Victim and Society: The victim in this case is Society as well as CVS. Unfortunately, Maury County shares a distinction with too many counties in Tennessee. That distinction is that there is a serious drug problem in our community. Lortab is a drug that is abused with frequency here and is sold illegally on the streets with regularity. Since the defendant did not relate that she has any addiction to either substance[ ] and indicated in her application that the use of narcotics was not a factor in the commission of the offense, the logical conclusion is that her repeated actions were carried out with the intent to obtain these substances to sell. Granting [the defendant] a diversion under the circumstances of this case would do nothing to improve the current drug problem in Maury County. It could only make it worse.

(5)     Deterrent effect of punishment on other criminal activity: As stated above, this is the most egregious case of Prescription Fraud seen in Maury County since, at least October, 2000. Suspending prosecution under the circumstances of this case (122 counts) could only serve as *encouragement* to others who might commit this type of offense to actually commit it. There would absolutely be no deterrent effect in granting diversion in this case. Granting diversion in this case could only result in an increase of this type or crime, not a decrease.

(6)     Defendant's amenability to correction: The defendant is a 28 year old mother of two with no prior record. These factors suggest that she would be amenable to correction. The defendant's employment situation has been somewhat sporadic which weighs slightly against the defendant. Her application for Diversion contains no information that suggests that the defendant has any amount of remorse for her actions. This, along with the extreme and egregious nature of these offenses, and [the defendant's] attempt to minimize her actions strongly diminish the State's confidence that she is amenable to correction through Pre-trial diversion.

(7)     Likelihood that Pretrial Diversion would serve the ends of justice and the best interests of society and the defendant: As stated above, the facts of this case are extreme. This is one of the most egregious examples of Prescription Fraud seen in this county. The ends of justice and the best interest of society require that disposition of this case serves to reduce the commission of this type of offense in the future. Suspending Prosecution in a case where the defendant's actions were as extreme, callous, and blatant as the defendant's could only have a detrimental effect on society and would only serve to defeat the end of justice. Also, the best interests of [the defendant] would not be served if there is no punishment for her actions. Her actions were extreme when she had never been in trouble and would theoretically fear the criminal justice system. Granting Pre-Trial Diversion solely because she had no record could only cause [the defendant] to have less respect for a system that she obviously didn't fear or respect to begin with.

In it's order affirming the denial of pretrial diversion, the trial court made the following findings:

After reviewing the record, the court finds that the District Attorney General properly considered all factors, and the record supports the District Attorney General's weighing of the respective factors. While at first blush the defendant's employment with CVS Pharmacy for over four years might appear to be a positive factor, the District Attorney General exercised appropriate discretion in concluding that her overall work history was not a positive factor, especially in light of her breach of trust at CVS by engaging in 122 acts of fraud or theft. The history of the case also shows

-6-

that she engaged in identity theft with regard to a grandmother and cousin and falsified computer records at CVS in order to effectuate and conceal her fraudulent activity. Identity theft with three physicians was also involved in the falsifying of prescriptions.

Certain offenses like fraud do not need extrinsic proof to justify a significant weighing of deterrence. Also, the circumstances of this offense and the number of Lortab tablets made available for abuse by the defendant, her boyfriend, or others make the nature and circumstances of the defendant's crimes and general deterrence significant factors more than offsetting, in relative weight, all positive facts to which the defendant is entitled.

The defendant argues that "the prosecutor placed too much weight upon the circumstances of the offense and failed to consider factors relating to her amenability to correction." According to the defendant, the State "failed to consider or misunderstood some of the facts which indicate that [the defendant] is amenable for correction, and it placed too much focus on the facts of the case itself." Specifically, she contends that the State failed to consider that the defendant is remarried, that she is a lifelong resident of the county, that her father still lives there, that she made a voluntary statement, began paying restitution, and surrendered her pharmacy technician license. The defendant further disagrees with the State's characterization of the defendant's work history as "sporadic" and the assumption that she was either lying about being addicted to the pills or that they were sold. She argues that "the facts of this case permeate every factor that the prosecutor discusses." Finally, she likens the case to the facts of the *McKim* case, in which the prosecutor refused to grant diversion based upon his belief that the crime should not be diverted. *See McKim*, 215 S.W.3d at 784. She asserts the prosecutor in this case, though not specifically stating, held the position that any "egregious" prescription fraud case should not be eligible for diversion.

We disagree with the defendant's characterization of the prosecutor's consideration of the case. From our review of the prosecutor's letter of denial, it is apparent that all factors were considered, including the defendant's amenability to correction. The defendant's argument focuses upon the weight given to prosecutor's findings and disagrees with the conclusions reached. That is not the purpose of our review. Moreover, we find that the defendant's reliance upon *McKim* is misplaced. In *McKim*, the prosecutor denied diversion based upon the commission of a specific crime, not because of the egregious nature of the specific crime committed. The defendant's argument that the prosecutor in this case would deny diversion to anyone charged in an "egregious" case of prescription fraud is, thus, not akin to the situation in *McKim*. Additionally, in her argument, she ignores established case law that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all relevant factors have been considered as well." *See Curry*, 988 S.W.2d at 158. The record supports that the circumstances of these offenses were particularly egregious. As noted, the prosecutor in this case considered all required factors, including those favorable to the defendant, and determined that the defendant was not an appropriate candidate for diversion. Thus, we agree with the trial court's finding that there was no abuse of discretion in the prosecutor's denial of diversion.

## CONCLUSION

Based upon the foregoing, the Maury County Circuit Court's denial of judicial diversion is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE