# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 14, 2006 Session Heard in Memphis[1]

## STATE OF TENNESSEE v. STEPHEN McKIM

### Extraordinary Appeal from the Shelby County Criminal Court
### No. 04-07227     Joseph B. Dailey, Judge

---

### No. W2005-02685-SC-S10-CD - Filed on January 29, 2007

---

We accepted this extraordinary appeal in order to (1) determine the effect of a district attorney general's consideration of an irrelevant factor in deciding whether to grant pretrial diversion and (2) clarify when an interlocutory appeal from a denial of pretrial diversion should be granted. In this case, the defendant was indicted for criminally negligent homicide following the death of his daughter after the defendant left her in his car on a hot summer day. The defendant applied for pretrial diversion. The district attorney general's office denied diversion, in part on the basis of its judgment that diversion of a negligent homicide "appears to be an aberration of the law." The trial court refused to overturn the prosecutor's decision, and the defendant applied for permission to pursue an interlocutory appeal. The trial court denied permission, and the defendant then applied to the Court of Criminal Appeals for permission to pursue an extraordinary appeal. The Court of Criminal Appeals denied the defendant's application. We granted review and hold that the district attorney general abused his discretion when he relied upon an irrelevant factor in denying pretrial diversion. The trial court's judgment affirming the denial of the defendant's application for pretrial diversion is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 10 Extraordinary Appeal; Judgment
### of the Trial Court Reversed; Remanded

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., and SHARON G. LEE, SP.J., joined.

Mark S. McDaniel, Memphis, Tennessee, for the appellant, Stephen McKim.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; Kevin Rardin, Assistant District Attorney General; for the appellee, the State of Tennessee.

---

[1]Oral argument was heard in this case on November 14, 2006, in Memphis, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

On the morning of August 9, 2004, the defendant, Stephen McKim, was running late for a meeting with his co-workers at Central North Church, where he serves as a Minister to Students. Before leaving his home for work, he placed his seven-month-old daughter Mia in a carseat in the backseat of his car. Mia attended a daycare center next door to the church where the defendant worked. By the time the defendant arrived at his workplace, Mia had fallen asleep. Forgetting that his daughter was in the car, the defendant rushed into his meeting. When the defendant remembered that he had not removed his daughter from his car, he hurried to retrieve her. Although she was still alive at that time, Mia died a short time later from hyperthermia as a result of the high temperature in the vehicle. The defendant was subsequently indicted for criminally negligent homicide.

In response to his indictment, the defendant applied for pretrial diversion. The defendant's application indicates that he has no prior criminal record; holds a college degree and is seeking a Masters of Divinity degree; taught in the public school system from 2001 to 2003, leaving to take his current position; is in excellent physical health; is married and emotionally stable with significant support from his extended family and community; has an "excellent reputation within the community"; and is "amenable to any conditions imposed during the diversion period." The defendant's application was accompanied by nineteen letters of support from family, friends, co-workers, and students, including an eloquent letter of support from his wife, Mia's mother.

The district attorney general's office denied the defendant's application for pretrial diversion. The written denial sets forth without discussion four factors favoring diversion: the defendant's employment "at the same job for seven years," the defendant's college degree, his lack of a prior criminal record, and the "numerous letters of support." The denial also sets forth four factors supporting denial of pretrial diversion: the defendant's negligence in failing to remove his daughter from his car on a hot summer day, thereby causing her death; the seriousness of the offense; the "need to deter crimes such as these," citing the deaths of almost one hundred children across the nation from being left in "hot vehicles"; and that the grant of diversion to the defendant would "lead the public to believe that crimes that involve death are treated lightly by the criminal justice system." Significantly, in assessing the seriousness of the offense, the assistant district attorney general who authored the written denial wrote,

> Even though this class of crime is divertible, it appears to be an aberration of the law. Other crimes involving death that were once divertible have been removed by legislation from consideration. These are voluntary manslaughter and vehicular homicide involving intoxication. Also, Aggravated Assault involving serious bodily injury has been removed from consideration for pretrial diversion by legislation. Certainly, the type of crime and the fact that it involved a death weigh heavily against the defendant's application for pretrial diversion.

The written denial concludes:

> After weighing and considering all the factors both for and against the defendant's application for pretrial diversion as outlined above, this office has reached the following conclusion. The positive aspects of the defendant's application for pretrial diversion when weighed against the negative aspects of this application indicate that this office should not grant the defendant's application for pretrial diversion. Having considered and weighed all of the aspects of this application, both positive and negative, this office must respectfully deny the defendant's application for pretrial diversion.

Upon the denial of his request for pretrial diversion, the defendant petitioned the trial court for a writ of certiorari. The defendant contended that the prosecutor abused his discretion in refusing to grant his application for pretrial diversion. The trial court disagreed and denied the defendant's request for relief. Thereafter, the defendant applied to the trial court for permission to pursue an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. The trial court denied the defendant's application. The defendant then applied to the Court of Criminal Appeals for permission to pursue an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Court of Criminal Appeals denied the defendant's application.[2] The defendant then sought review by this Court. We granted the defendant's application for extraordinary appeal in order to (1) determine the effect of a district attorney general's consideration of an irrelevant factor in deciding to deny pretrial diversion and (2) clarify when an interlocutory appeal from the denial of pretrial diversion should be granted.

## ANALYSIS

### I. Prosecutor's Duty upon Pretrial Diversion Application

The pretrial diversion statute permits a district attorney general to suspend his or her prosecution of a qualified defendant for a period of up to two years. See Tenn. Code Ann. § 40-15-105(a)(1)(A) (Supp. 2004). Only a narrow class of defendants is eligible for pretrial diversion. An eligible defendant is one who has not previously been granted diversion, does not have a disqualifying prior conviction, and is seeking pretrial diversion for an offense that is not a Class A or Class B felony, certain Class C felonies, a sexual offense, driving under the influence, or vehicular assault. See id. at (a)(1)(B)(i); State v. Bell, 69 S.W.3d 171, 176 (Tenn. 2002).

A statutorily eligible defendant is not presumptively entitled to diversion. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). Rather, the district attorney general has the sole discretion to determine whether to grant pretrial diversion to one who meets the strict statutory requirements. Bell, 69 S.W.3d at 176 (citing Curry, 988 S.W.2d at 157; State v. Pinkham, 955 S.W.2d 956, 959

---

[2]The defendant actually applied twice to the Court of Criminal Appeals for permission to pursue an extraordinary appeal. The intermediate appellate court denied the application both times for the same reasons.

(Tenn. 1997)). In determining whether to grant pretrial diversion, the district attorney general "has a duty to exercise his or her discretion by *focusing on a defendant's amenability for correction* and by considering all of the *relevant* factors, including evidence that is favorable to a defendant." Bell, 69 S.W.3d at 178 (emphases added); see also State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). Any factors tending to reflect accurately upon whether the applying defendant will or will not become a repeat offender should be considered. Hammersley, 650 S.W.2d at 355.

> Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Id. The prosecutor may consider the need for general deterrence. See State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993). However, the circumstances of the offense and the need for deterrence "cannot be given *controlling* weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Id. (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). This Court has recognized that "the responsibility placed upon prosecutors to pick and choose among the lot [of applicants for pretrial diversion] based upon a particular candidate's amenability to rehabilitation or recidivism requires the exercise of unusual powers of discrimination." Hammersley, 650 S.W.2d at 353.

If the prosecutor denies the application, "the factors upon which the denial is based must be clearly articulable and stated in the record." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989), overruled in part on other grounds by State v. Yancey, 69 S.W.3d 553, 559 (Tenn. 2002). "This requirement entails more than an abstract statement in the record that the district attorney general has considered [all relevant] factors." Id. Rather, "[i]f the district attorney general denies pretrial diversion, that denial must be written and must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each." Pinkham, 955 S.W.2d at 960; see also Bell, 69 S.W.3d at 178 (reiterating that the district attorney general must not only consider all relevant factors, including evidence favorable to the defendant, he or she must also weigh each factor and must explain in writing how a decision to deny pretrial diversion was determined). A district attorney general's failure to consider and articulate all relevant factors constitutes an abuse of discretion. Bell, 69 S.W.3d at 178; see also Curry, 988 S.W.2d at 159.

These cases make clear that a district attorney general is bound to consider and weigh all *relevant* factors in determining whether to grant pretrial diversion. The obvious corollary to this requirement is that the district attorney general must *avoid* relying upon *irrelevant* factors in denying diversion. See State v. Thompson, 189 S.W.3d 260, 268 (Tenn. Crim. App. 2005) (holding that the prosecutor abused his discretion in denying pretrial diversion where he "did not properly consider all of the relevant factors, and did consider some irrelevant ones"); State v. Lane, 56 S.W.3d 20, 27 (Tenn. Crim. App. 2000) (district attorney general abused his discretion in denying pretrial diversion because "off-duty acts that are unrelated to this defendant's duties of public employment are not a proper basis for imposing a higher standard of conduct and thereby justifying a denial of pretrial

diversion"). In this case, the district attorney general's office denied diversion in part based upon its individual and irrelevant determination that criminally negligent homicide should not be a divertible offense.

Our review of the assistant district attorney general's written denial makes clear that he did not focus on the defendant's amenability to correction in determining whether to grant diversion but rather on the nature and circumstances of the offense and its tragic consequence. Moreover, the assistant district attorney general is apparently of the opinion that the legislature has erred by not reclassifying criminally negligent homicide as an offense ineligible for pretrial diversion. The assistant district attorney general described the legislature's decision to make criminally negligent homicide a divertible offense as "an aberration of the law." He further declared that granting diversion to defendants charged with negligent homicide would "lead the public to believe that crimes that involve death are treated lightly by the criminal justice system." The tone of the assistant district attorney general's written denial suggests that he will not grant pretrial diversion to *any* defendant charged with criminally negligent homicide, regardless of the defendant's personal circumstances and amenability to correction.

In Hammersley, this Court was faced with a similar situation in which the district attorney general had embraced a policy not to grant pretrial diversion where the defendant was charged with what was, in the district attorney general's view, a "serious" crime. In that case, the defendant had been charged with larceny, which the prosecutor testified was "a serious crime" in the subject county. The prosecutor admitted that he denied pretrial diversion to the defendant "based upon the seriousness of the crime itself." 650 S.W.2d at 356. This Court held that the prosecutor "was obviously in error in undertaking to apply a local policy contrary to or different from that provided by state law" and that the prosecutor's action was "contrary to the policies formulated in the Pretrial Diversion Act." Id. We draw the same conclusion here.

Contrary to established precedent, the assistant district attorney general in this case focused not on the defendant's amenability to correction but rather on his own opinion of what should and should not be a divertible offense. In so doing, the assistant district attorney general considered a factor not relevant to his determination of whether to grant pretrial diversion to the defendant in this matter. The prosecutor's consideration of, and emphasis upon, an irrelevant factor so tainted his decision-making process as to constitute an abuse of discretion.

## II. Trial Court's Review of Prosecutor's Decision

Where the prosecutor denies a defendant's application for pretrial diversion, the defendant may petition the trial court for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3) (Supp. 2004). The prosecutor's decision is "presumptively correct," Curry, 988 S.W.2d at 158, and, on review, the trial court is limited to examining only the evidence considered by the district attorney general and must determine thereupon whether the prosecutor has abused his or her discretion, Bell, 69 S.W.3d at 177. That is, "the trial court should examine each relevant factor in the pretrial diversion process

to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence." Yancey, 69 S.W.3d at 559. The trial court must focus on the prosecutor's methodology rather than the intrinsic correctness of his or her decision, and the trial court should therefore not engage in re-weighing the evidence considered by the district attorney general. Id. at 558-59. If the trial court determines that the district attorney general has failed to consider and weigh all relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination. Bell, 69 S.W.3d at 180.[3]

In this case, the trial court noted the assistant district attorney general's explicit opinion that criminally negligent homicide should not be a divertible offense and stated that it was "probably inappropriate and should not be a consideration in this process."[4] Nevertheless, the trial judge concluded that he did not think "that the inclusion of that statement necessarily nullifies the decision" and determined that the assistant district attorney general did not abuse his discretion in denying pretrial diversion.[5] As set forth above, we disagree. The trial court should have instructed the assistant district attorney general that he had taken an irrelevant factor into consideration and that he had failed to focus his analysis on the proper issue. That is, the trial court should have recognized that the assistant district attorney general had abused his discretion in evaluating the defendant's application. Thereupon, the trial court should have reversed the prosecutor's decision and remanded the matter of the defendant's diversion application for further consideration.[6] See Bell, 69 S.W.3d at 179.

_____

[3]If the trial court determines that the district attorney general *has* considered all relevant factors, and no irrelevant ones, and has nonetheless committed an abuse of discretion in denying diversion, the trial court may order the prosecutor to place the defendant on pretrial diversion. See Tenn. Code Ann. § 40-15-105(b)(3) (Supp. 2004).

[4]The State concedes in its brief to this Court that "it is not appropriate for a [district attorney general] to comment on or give any weight to the fact that other offenses involving death or serious bodily injury have been removed from the eligible class of offenses."

[5]Upon the defendant's petition for writ of certiorari, the trial court convened a hearing not to take evidence but to hear argument. During this hearing, the trial court questioned the State's attorney about his colleague's criticism of the legislature's decision to make criminally negligent homicide a divertible offense. As we noted in Bell, however, this Court has "rejected a proposed remedy that would allow the district attorney general to testify as to the reasons for denying diversion before the trial court." 69 S.W.3d at 179 n.6 (citing Curry, 988 S.W.2d at 160).

[6]That there may be substantial evidence to support the denial of pretrial diversion upon a *proper* consideration of all *relevant* factors, does not permit the district attorney general to short-circuit the analytical process. As we noted in Bell, "a court cannot reasonably conclude that there is substantial evidence to support the district attorney general's decision if in fact the district attorney general has not first considered *all* of the *relevant* factors and their relative weight." 69 S.W.3d at 179 (emphases added).

### III. Grounds for Appeal

#### A. *Rule 9 Interlocutory Appeal*

We turn now to examining the procedural history by which this case has reached us. Unsuccessful in having the prosecutor's decision to deny pretrial diversion overturned, the defendant sought relief by applying to the trial court for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. In determining whether to grant a Rule 9 application, a trial court should consider, among other things,

> (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of the final judgment.

Tenn. R. App. P. 9(a). In this case, the defendant sought Rule 9 appellate review on the bases that it would prevent needless, expensive, and protracted litigation, and on the need to establish a uniform body of law on the issue. The trial court denied the defendant's application upon its determination that

> a Rule 9 appeal is not necessary to avoid irreparable injury to the defendant. The normal avenues of litigation and appeal of these issues are still available to the defendant. The granting of a Rule 9 appeal would not prevent needless expense and protracted litigation given all the circumstances of this case. And, there already exists a uniform body of law, in this Court's opinion, which would uphold the decision of the Attorney General in denying diversion. In other words, it [is] this Court's opinion, that no extraordinary circumstances exist pursuant to Rule 9(a) that would warrant the granting of this Interlocutory Appeal.

We recognize, of course, that "[i]nterlocutory appeals to review pretrial orders or rulings are generally 'disfavored,' especially in criminal cases." Reid v. State, 197 S.W.3d 694, 699 (Tenn. 2006) (quoting State v. Gilley, 173 S.W.3d 1, 5 (Tenn. 2005)). As the text of Rule 9 makes clear, however, an interlocutory appeal should be granted where it will "result in a net reduction in the duration and expense of the litigation if the challenged order is reversed." Tenn. R. App. P. 9(a)(2). In this case, the challenged order was the trial court's denial of the defendant's petition for writ of certiorari seeking reversal of the district attorney general's denial of his application for pretrial diversion. Given the assistant district attorney general's disregard for this Court's guidelines concerning the proper factors to consider in evaluating applications for pretrial diversion, the

probability that the trial court's order would be reversed was high. Upon reversal, if the defendant was subsequently placed on pretrial diversion, the necessity of a trial on the defendant's indictment would be avoided.[7] Clearly, Tennessee's criminal justice system will experience a net reduction in the duration and expense of the litigation commenced upon the defendant's indictment if the State of Tennessee does not have to try him. Finally, the grant of an interlocutory appeal under the circumstances of this case does not create the risk of piecemeal appellate litigation or delayed justice. Cf. Gilley, 173 S.W.3d at 5 (citing United States v. MacDonald, 435 U.S. 850, 853-54 (1978)).

We do not mean by this that every defendant who is denied pretrial diversion by the district attorney general and then denied relief by the trial court should be granted a Rule 9 appeal. In this case, however, the assistant district attorney general's consideration of a clearly irrelevant factor, and his focus on the nature and circumstances of the offense rather than the defendant's amenability to correction, created an issue appropriate for interlocutory appeal. In addition, at the time of this defendant's application for interlocutory appeal pursuant to Rule 9, there existed a need to develop a uniform body of law regarding a prosecutor's consideration of factors that are irrelevant to his or her determination of whether to grant pretrial diversion. Accordingly, the particular circumstances of this case warranted a grant by the trial court of the defendant's Rule 9 application for interlocutory appeal.

*B. Rule 10 Extraordinary Appeal*

When the trial court refused to grant an interlocutory appeal, the defendant applied to the Court of Criminal Appeals for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10, which provides that

> [a]n extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules.

Tenn. R. App. P. 10(a). This Court has stated that a Rule 10 extraordinary appeal will lie whenever the prerequisites for common law certiorari exist: the court's ruling represents a fundamental illegality, the ruling fails to proceed according to the essential requirements of the law, the ruling is tantamount to the denial of a party's day in court, the trial court's action is without legal authority, the action of the trial court constitutes a plain and palpable abuse of discretion, or either party has lost a right or interest that may never be recaptured. State v. Willoughby, 594 S.W.2d 388, 392 (Tenn. 1980).

---

[7]Of course, a trial could become necessary later if the defendant violated the terms of his diversion and the district attorney general's office terminated the memorandum of understanding. See Tenn. Code Ann. § 40-15-105(d) (Supp. 2004).

Prior to July 1, 1997, interlocutory appeal under Tennessee Rules of Appellate Procedure 9 or 10 was the *only* means of attempting to overturn a trial court's decision to affirm a district attorney general's denial of pretrial diversion. A defendant who disagreed with the decision of the prosecutor or the trial court was required to pursue an interlocutory appeal in order to challenge that decision. If the defendant failed to seek interlocutory relief and was thereafter convicted, he or she was deemed to have waived the right to challenge the denial of pretrial diversion on direct appeal. See State v. Mecord, 815 S.W.2d 218, 219 (Tenn. Crim. App. 1991). Effective July 1, 1997, however, Tennessee Rule of Criminal Procedure 38 was amended to permit a defendant to appeal his or denial of pretrial diversion after conviction as well as before. Specifically, Rule 38 now provides that, where a defendant is unsuccessful in having the trial court reverse the prosecutor's denial of pretrial diversion,

> the defendant may pursue an interlocutory appeal . . . pursuant to either Rule 9 or Rule 10 of the Tennessee Rules of Appellate Procedure. . . . If the defendant does not pursue an interlocutory appeal of the denial of a writ of certiorari, the defendant may appeal the denial pursuant to Rule 3(b), Tennessee Rule[s] of Appellate Procedure, following the entry of the final judgment in the trial court.

Tenn. R. Crim. P. 38 (b). Thus, a defendant denied pretrial diversion may still seek an interlocutory appeal but will not be deemed to have waived the issue if he or she waits until after conviction to appeal.

We recognize, of course, that Rule 38 does not expressly state that if the defendant does pursue an interlocutory appeal, the trial court and the Court of Criminal Appeals *shall* grant the defendant's Rule 9 or Rule 10 application. In the unique context of pretrial diversion, however, the courts to which application for interlocutory appeal is made should construe liberally the defendant's alleged grounds. As we noted in Willoughby, a Rule 10 extraordinary appeal should be granted in cases where a defendant may otherwise lose a right or interest that may never be recaptured. Such an interest is clearly at stake in the *pretrial* quest for pretrial diversion. As one of this Court's previous chief justices recognized nearly thirty years ago,

> [t]he self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction. The result contemplated is the restoration of successful divertees to useful and productive citizenship. This is a legitimate and praiseworthy objective and one that has now become the public policy of the State.

Pace v. State, 566 S.W.2d 861, 868 (Tenn. 1978) (Henry, C.J., concurring). Once tried, a defendant can never recapture his or her interest in being spared the attendant "stigma, embarrassment and expense."

The State, too, secures benefits upon the *pretrial* grant of pretrial diversion that may otherwise be lost. The State and its witnesses are saved the time, expense, and delay of further prosecution. Judicial and prosecutorial resources are conserved. The terms of the diversion will help to ensure the defendant's speedy return to law-abiding behavior.

In short, the benefits of successfully diverting a case prior to trial are significant and will be lost upon the denial of an interlocutory appeal. That outcome generally should not occur, especially whereSas it does hereSthe record makes obvious that the prosecutor abused his or her discretion in evaluating the defendant's application.

In this case, the Court of Criminal Appeals twice denied the defendant's Rule 10 application, ruling the second time:

> The Defendant incorrectly maintains that the failure to grant an extraordinary appeal will deny meaningful consideration of his application for pretrial diversion. The Defendant is not precluded from appellate review. Should the Defendant be convicted, he will be able to dispute the denial on direct appeal. *See* Tenn. R. Crim. [P.] 38; *State v. Yancey*, 59 S.W.3d 553, 556 (Tenn. 2002). Moreover, this Court is not inclined to expand the boundaries for granting extraordinary appeals as prescribed by Rule 10, Tennessee Rules of Appellate Procedure.

Thus, in determining to deny the defendant's Rule 10 application, the Court of Criminal Appeals appears to have relied on the defendant's ability under Rule 38 to pursue a direct appeal on the denial of pretrial diversion in the event he was convicted.

Nothing in the amended text of Tennessee Rule of Criminal Procedure 38, or in the text of the Advisory Commission Comments thereto, indicates that the amendment to Rule 38 was adopted in order to limit or discourage interlocutory appeals from pretrial diversion decisions. Indeed, Rule 38 continues to acknowledge specifically a defendant's right to pursue such appeals. As amended, Rule 38 simply gives an unsuccessful defendant another avenue to pursue after trial if, for whatever reason, he or she chooses to forego the interlocutory route. See Tenn. R. Crim. P. 38(b)(2). If, for instance, a defendant is optimistic about an acquittal, he or she may decide not to pursue an interlocutory appeal. Under our current Rule 38, a direct appeal is now available if the defendant's optimism proves misplaced. The reviewing court on direct appeal is still permitted to consider only those matters considered by the district attorney general and not facts subsequently elicited at trial. See Yancey, 69 S.W.3d at 558. Accordingly, the Court of Criminal Appeals should not deny a Rule 9 or 10 application from a denial of pretrial diversion simply on the basis that the defendant may pursue a direct appeal upon conviction.

We conclude, therefore, that the Court of Criminal Appeals would have been justified in granting the defendant's Rule 10 application for extraordinary appeal. Our review of the record indicates a clear abuse of discretion by the prosecutor in evaluating the defendant's application for pretrial diversion and further indicates the trial court's appropriate concern over the methodology

utilized by the prosecutor. Given the unique nature of pretrial diversion and the oft-repeated mandates issued by this Court concerning the evaluation of applications therefor, an extraordinary appeal in this case was warranted.

## CONCLUSION

The trial court's order affirming the denial of pretrial diversion is reversed. This matter is remanded for further proceedings consistent with this opinion. Specifically, the trial court shall reverse the decision of the district attorney general's office denying pretrial diversion and remand this matter for a proper evaluation of the defendant's application. The costs of this cause are assessed against the State of Tennessee, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE