# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 18, 2009

## STATE OF TENNESSEE v. JOHN C. HOWARD

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40800338      Michael R. Jones, Judge**

---

**No. M2009-00465-CCA-R3-CD - Filed January 18, 2011**

---

Appellant, John C. Howard, was indicted for three counts of aggravated child abuse. Appellant subsequently pled guilty to two counts of aggravated assault in an open, best interest plea.  After a sentencing hearing, a five-year split confinement sentence was imposed.  The trial court ordered Appellant to serve one hundred twenty days in incarceration for each offense, followed by five years of probation, and ordered the sentences to be served concurrently.  The trial court further denied judicial diversion.  Appellant seeks a review of the trial court's denial of diversion.  Because we determine that the trial court did not abuse its discretion in denying judicial diversion, we affirm the judgments of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, (on appeal); Edward Dewerff and Sharon Massey, Clarksville, Tennessee, (at trial), for the appellant, John C. Howard.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

In accordance with the policy of this Court, we will refer to the minor victim by the victim's initials.  Appellant was indicted by the Montgomery County Grand Jury in March

of 2008 with three counts of aggravated child abuse for injuries sustained by G.H. At the time of the indictments, Appellant was in a relationship with the mother of G.H. G.H. was less than eight months of age when the incidents that gave rise to the indictments took place.

In November of 2008, Appellant entered a best interest plea to two counts of aggravated assault. The remaining count of the indictment was dismissed. There was no agreement as to the sentence or manner of service of the sentence. Appellant sought judicial diversion from the trial court.

The following facts were given at the plea acceptance hearing by the State's attorney. On September 24, 2007, G.H.'s mother noticed that G.H. was not moving one of her legs and that the leg appeared swollen. The leg was sensitive to touch. She took the child, who was approximately four months old at the time, to her pediatrician, who ordered x-rays.

The x-rays revealed that G.H. had a fracture of the left femur that was less than one week old. In addition, G.H. had healing fractures in the left tibia and fibula that were approximately four to six weeks old. G.H. also had a tibial fracture in the right leg that appeared older than four to six weeks. G.H. had new bone formation in the left upper arm and forearm. This new bone formation indicated some type of past trauma that could not be confirmed as a fracture. There were also three rib fractures that appeared to be healing.

After the x-rays, the Department of Children's Services (DCS) was notified of the findings. During the investigation, Appellant made statements indicating that he was often rough with G.H. during diaper changes and that the injuries must have occurred during diaper changes. Appellant stated that any injuries were not intentional. Appellant stated that he knew of no other family member that could have caused the injuries to G.H. State experts concluded that normal child care and routine diaper changing could not have caused the injuries suffered by G.H.

At the conclusion of the plea acceptance hearing, the trial court accepted the plea and set the matter for sentencing, during which the trial court would also determine whether Appellant would receive judicial diversion. At the sentencing hearing, G.H.'s mother explained that she met Appellant in the summer of 2005 while she was a student worker for a high school program at Austin Peay University entitled "Upward Bound." Appellant was a teacher in the program. The two worked together in the summer of 2005 and 2006 and became a couple in August of 2006, when G.H.'s mother moved to Jackson, Tennessee, to start school at Lane College.

G.H.'s mother discovered she was pregnant in the fall of 2006. After her first semester of college, she returned to Clarksville and moved in with Appellant. When G.H.

was born, her mother's parents assisted with childcare because both Appellant and G.H.'s mother worked.

After G.H. was born, her mother took her to the doctor several times because she was "crying constantly." The victim's mother noticed that the child cried "hysterically" when Appellant picked her up and that Appellant often "got upset" when he could not calm the child down. Appellant also got "very frustrated" when he was told that he was "being too rough or to hold [G.H.] in a certain way." The child's mother described two incidents in which Appellant displayed anger toward G.H. On one occasion, she noticed finger imprints on the child's shoulders, and on another occasion the child would not stop crying and Appellant "tossed her on the bed where [G.H.'s mother] was laying."

After the injuries were discovered, the child was temporarily placed in the custody of the child's maternal grandparents. The child was eventually returned to the care of her mother and has suffered no further injuries. Appellant has provided financially for G.H. since his separation from the victim's mother in December of 2007. After the indictment, G.H.'s mother received several letters from Appellant in which he stated that it was never his intent to hurt G.H. She did not know if this was Appellant's way of apologizing, but described Appellant as "very full of anger."

Appellant presented witnesses to testify on his behalf. Capri Griffy-Elliot attended church with Appellant and had known him for "about four years." Ms. Griffy-Elliot saw Appellant a few times a week at church and claimed that Appellant had a reputation for peacefulness and had a good character. She had never seen Appellant get upset or angry but had never witnessed his interaction with G.H. at home.

Clifford Greer also testified. He described himself as a "fraternity brother" and "close friend" of Appellant. They have known each other for about eleven years. Mr. Greer has never seen Appellant lose his temper over anything and has witnessed Appellant interacting with G.H. "on occasion." He also described Appellant as a peaceful person.

Cheryl Durham, the executive director of NIA Association in Clarksville, became acquainted with Appellant during his employment with NIA. NIA is an agency that provides services for "individuals with mental retardation." Appellant was fired from his job because of the pending charges. She further testified that he could reapply for his job "if there is no evidence of a felony or a substantiated case of abuse."

Appellant's pastor, Dennis Lawson, described Appellant as a peaceful person. Reverend Lawson had known Appellant for about four or five years and saw him several times a week at church.

Summer Carney, Appellant's ex-wife, explained that she and Appellant were still friends despite their divorce. The couple met in 1995, married in 1997, and divorced in 2001. The couple remained in a relationship after their divorce until 2006. Appellant continues to help Ms. Carney raise her twelve-and-a-half year old daughter, even though he is not the child's biological father. Ms. Carney described Appellant as a "wonderful father" who had never lost his tempter with her daughter.

At the conclusion of the testimony, pursuant to Tenn. Code Ann. § 40-14-101, Appellant made the following unsworn statement on his own behalf:

> [T]his whole situation, it has been heavy on my heart. . . .
>
> I have not had the opportunity to be a father to [G.H.]. I have had the opportunity to be a father to [Ms. Carney's daughter], and she's almost thirteen August 20th of this year. . . . [S]ome of the things are damaging towards me but I am truly sorry that the situation has happened to. . .[G.H.].
>
> When the situation did happen, when I was able to get counseling and I first had a psychological assessment done to make sure that I wasn't this monster that - - you know, was on paper or anything like that and I also received counseling from November of '06 to - - I'm sorry, November '07 to June of '08, and the reason why I couldn't continue counseling because number one, I didn't have a job any more and you know, my insurance ran out so once again, Your Honor, I just wanted you to understand as well as the Court, I have sent [G.H.'s mother] a letter apologizing to her for the pain that I have caused her and [G.H.], in her eyes, and I just wanted the Court to understand that I am truly sorry.

At the conclusion of the hearing, the trial court commented that the age of the child "bears heavily upon [the court's] mind." The trial court considered Appellant's amenability to correction and determined that Appellant would probably not commit crimes in the future but was unable to determine whether Appellant was "accepting responsibility for these injuries." The trial court also determined that the circumstances of the offense were "very, very serious" because there were "at least two different sets" of severe injuries to a child that was less than five months old. The trial court noted that Appellant had a good social history and no criminal history. The trial court commented that there was no proof in the record about Appellant's physical status and limited information about Appellant's mental health, except for Appellant's own claim that he voluntarily undertook counseling. The trial court opined that while there was no deterrent value to Appellant by denying judicial diversion, there was a great deal of deterrent value to the public by denying judicial diversion.

The trial court examined Appellant's attitude and concluded that it was hard to gauge Appellant's attitude based on the record before the court. The trial court concluded by denying diversion, stating:

> The Court believes that the circumstances of this offense are so great that it just really and truly outweighs all of these other factors considerably. This is not an ordinary aggravated assault case. This is a charge of aggravated assault when a victim is very, very small. Even - - and that's not an element of the offense as this case was settled or a plea was entered. So I believe that the circumstances are so great that the post-trial diversion, particularly does not serve the interests of justice whatsoever, therefore, I am not going to grant [j]udicial [d]iversion.

Finally, the trial court also noted two enhancement factors, including the fact that the victim was particularly vulnerable due to her age and that Appellant abused a position of private trust.

Appellant filed a timely notice of appeal, challenging the trial court's denial of judicial diversion.

## II. Analysis

### *Judicial Diversion*

Appellant contends that the trial court abused its discretion in denying judicial diversion. A defendant is eligible for judicial diversion if he or she is convicted of a Class C, D, or E felony or lesser crime and has not previously been convicted of a felony or a Class A misdemeanor. *See* T.C.A. § 40-35-313(a)(1)(B)(I). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. *Id* § 40-35-313(a)(1)(A). When the probationary period expires, if the defendant has completed probation successfully, the trial court will dismiss the proceedings against the defendant with no adjudication of guilt. *See id*. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. *See id*. § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. *See id*. § 40-35-313(a)(1)(A).

When a defendant challenges the manner of serving a sentence, this Court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." *Id*. § 40-35-401(d). However, when the

defendant challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this Court will not disturb that decision on appeal absent an abuse of discretion. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983)).

In determining whether a defendant is qualified for judicial diversion, the trial court should consider: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant as well as others; (7) whether judicial diversion would serve the interests of justice; (8) the defendant's attitude; (9) the defendant's behavior since arrest; (10) the defendant's home environment; (11) drug usage; (12) emotional stability; (13) past employment; (14) general reputation; (15) family responsibility; and (16) attitude of law enforcement. *Cutshaw*, 967 S.W.2d at 343-44. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating, Inc.*, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59.

The trial court herein found that Appellant was amenable to correction but that the circumstances of the offense weighed against judicial diversion. Specifically, the trial court found that the injuries were "very serious" and happened to a very young victim. In other words, the circumstances of the offense were egregious and justified the denial of judicial diversion despite Appellant's favorable personal history. The trial court found several factors that weighed in Appellant's favor, including his lack of a criminal record, his social history, his behavior since arrest, his past employment, his continued support of the victim's care, and his reputation. The trial court concluded, however, that judicial diversion was not appropriate.

On appeal, Appellant characterizes the trial court's reliance on the circumstances of the offense as the equivalent of a categorical policy of denying diversion based on the type of crime committed. We determine that this argument is not supported by the record or Appellant's reliance on *State v. McKim*, 215 S.W.3d 781 (Tenn. 2007), and *State v. Curry*, 988 S.W.2d 153 (Tenn. 1999).

In *McKim*, the supreme court held that the district attorney's office abused its discretion in denying an application for pretrial diversion "in part based upon its individual

and irrelevant determination that criminally negligent homicide should not be a divertible offense." 215 S.W.3d at 787. The court concluded that the prosecutor substituted his own opinion of what legislative policy should be "'contrary to the policies formulated in the Pretrial Diversion Act.'" *Id*. at 788 (*quoting Hammersley*, 650 S.W.2d at 356).

In *Curry*, the supreme court addressed the denial of pretrial diversion where the prosecutor improperly based the denial on the circumstances of the offense without weighing or even addressing the "essential factors," including those favorable to the defendant. 988 S.W.2d at 158. The court determined that there was an abuse of discretion because the denial of diversion was not based on a consideration of "all relevant factors . . . , in particular, those factors relevant to amenability for rehabilitation." *Id*. at 159.

In the case herein, the trial court did not base the denial of diversion on personal opinion or a determination that the offense was not divertible. Further, the trial court considered all of the relevant factors prior to making its determination. Moreover, contrary to Appellant's assertion, there is absolutely no evidence that the trial court was swayed by the prosecutor's comments about Appellant's choice to submit a statement of allocution rather than testify. In fact, the trial court did not even comment on Appellant's choice in making its determination. Based on our review of the record, we conclude that the trial court adequately explained its reasons for denying Appellant's request for judicial diversion and carefully considered the factors necessary, both those favorable to Appellant and those weighing against the grant of diversion. There is substantial evidence in the record that supports the trial court's denial of judicial diversion, including the trial court's reliance on the egregious nature of the offense. *See State v. Kyte*, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993) (observing that the nature and circumstances of an offense alone may support a denial of judicial diversion). Appellant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the trial court's denial of Appellant's request for judicial diversion.

_____
THOMAS T. WOODALL, JUDGE