# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 18, 2011 Session

## STATE OF TENNESSEE v. SIDNEY S. STANTON, III

**Appeal from the Circuit Court for Warren County**
**No. M-12220        E. Shayne Sexton, Special Judge**

**No. M2010-01868-CCA-R9-CD - Filed January 10, 2012**

The Defendant, Sidney S. Stanton, III, appeals from the Warren County Circuit Court's order denying the Defendant relief from the assistant district attorney general's denial of pretrial diversion. After a hearing, the trial court affirmed the denial of diversion and found no abuse of prosecutorial discretion but granted the Defendant's motion for this interlocutory appeal. The Defendant contends that the assistant district attorney general abused his discretion by denying the Defendant's application for pretrial diversion and that the trial court erred in declining to grant certiorari, finding that there was no abuse of prosecutorial discretion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. JUDGE J.C. MCLIN was originally on the panel to which this case was assigned. Judge McLin died September 3, 2011, and we acknowledge his faithful service to this Court.

Christopher Brent Keeton, Manchester, Tennessee, for the appellant, Sidney S. Stanton, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Mark A. Fulks, District Attorney General; and Joshua Crain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

The record reflects that on July 15, 2009, the Tennessee Department of Agriculture (TDA) was notified that there were dead horses on a farm located on Bluff Springs Road in

Warren County, Tennessee. That same day, a representative from TDA, Marshall Lafever, went to the Bluff Springs farm to investigate the allegations. Mr. Lafever determined that there were two dead, unburied horses on the property. He contacted the Defendant and informed him that the horses needed to be buried and that he would return to ensure the burials had taken place. On July 16, 2009, Mr. Lafever returned to the Bluff Springs farm where he noticed that the horses had been relocated to the back of the farm but had not been buried. While at the farm, Mr. Lafever noticed that two additional horses had died and several horses appeared to be in very poor health. As a result of his observations, Mr. Lafever contacted the Warren County Sheriff's Department and Dr. Jill Johnson from TDA for assistance on the farm. A search warrant was obtained, and the Defendant was kept away from the property while the horses and farm conditions were examined. During the examination, it was determined that two additional horses had died earlier and were almost completely decomposed in the field.

A former employee of the Defendant, Melvin Lee Lazzara, stated that he cared for the horses from September 2006 until March 2009 and was unaware of who had been taking care of the horses since that time. He stated that he fed the horses 15 bags of feed per day, while employed for the Defendant, and explained that approximately three to four horses had died at the Defendant's home while he was employed there. Mr. Lazzera also stated that he had returned to the Defendant's farm the week of July 5, 2009, to put out three bags of feed for the horses. He also stated that he returned to the farm on July 15, 2009, to "pull off the dead horses" when he noticed that some of the horses were thin.

Michael Barry, an animal Cruelty and Neglect Investigator, also arrived at the farm and determined that there were approximately 47 to 52 horses on the 65-acre property. He reported that at least 12 horses had a Body Condition Score (BCS) of one to two, with the lowest score being a one (1). He also determined that the pasture was limited due to overgrazing and weed invasion and that the neglect of the horses was due to overpopulation and a lack of adequate forage and feed. Ultimately, Mr. Barry indicated on the Animal Cruelty and Neglect Investigation form that there was probable cause to believe that the Animal Cruelty Act had been violated. At that point, it was determined that the farm should be treated as a crime scene and that the horses would be seized if the Defendant did not voluntarily surrender them.

As a result of the search, the Defendant was asked to meet with investigators to discuss their findings regarding the farm. The Defendant agreed to meet with investigators, but he made any disposition of the horses contingent on Dale Beaty, the County Director of Warren County Extension, coming to the farm to "double-check" the determination made by Michael Barry. On July 17, 2009, the Defendant met with investigators in the presence of an attorney. The Defendant agreed to speak with Chief Investigator Herb Rowland about the

conditions at the Bluff Springs Road farm. The same day, the Defendant granted the investigator continual access to both the Bluff Springs Road farm and his home farm from July 17, 2009 to July 20, 2009. Ultimately, the determination was made that the investigators would visit the Defendant's home farm to see whether there were horses in the same condition there as they were at the Bluff Springs Road farm.

At the Defendant's request, Dale Beaty was called out to meet agents from the Warren County Sheriff's Department at the Defendant's home farm to investigate the conditions there. While at the Defendant's home farm, agents observed that the Defendant had numerous dogs tied to farm implements and many more in dog runs. The Defendant also had horses on the farm in different locations and many of them were in the same or worse condition as the horses on the Bluff Springs Road farm. Mr. Beaty also observed the farm and determined that there were horses on the farm that he would body score between one and three on the BCS; however, Mr. Beaty was unable to make the determination that the Animal Cruelty Act had been violated. Thus, no further action could be taken by agents, and they retreated from the Defendant's home farm to the Bluff Springs Road farm so Mr. Beaty could "double-check" the earlier determination by Michael Barry. After Mr. Beaty observed the conditions at the Bluff Springs Road farm, he confirmed the determination made by Michael Barry, and the Defendant subsequently agreed to relinquish some of the horses.

On July 18, 2009, the Defendant surrendered16 horses from the Bluff Springs Road farm and seven horses from his home farm to Volunteer Equine Advocates. He also surrendered three additional horses from his home farm to the Humane Society of the United States, for a total relinquishment of 26 horses. However, the Defendant refused to relinquish any additional horses and ceased cooperation with the Humane Society because he said he did not have time to address the issues. The relinquished horses were take to Dr. Marsha Gentry in Gallatin, Tennessee. Dr. Gentry performed various tests and determined that all the horses had extremely heavy parasite loads (strongyles and/or roundworms). Two of the horses had to be euthanized, and another horse subsequently died while in Dr. Gentry's custody.

At the conclusion of this investigation, the Defendant was charged in a 16-count indictment for animal cruelty. The assistant district attorney general denied the Defendant's application for pretrial diversion, and the Defendant petitioned the trial court for a writ of certiorari to review the decision for abuse of prosecutorial discretion. After a motion hearing, the trial court determined that there was sufficient evidence in the record to support the denial of pretrial diversion and that the assistant district attorney general did not abuse his discretion. Pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the Defendant now pursues an interlocutory appeal from the decision of the trial court affirming the assistant district attorney general's denial of his application for pretrial diversion.

## II. Analysis

The Defendant filed a Rule 9 application for interlocutory appeal arguing that the trial court erred in denying the Defendant's petition for writ of certiorari in the Warren County Circuit Court. The Defendant contends that the trial court committed error because it found that the assistant district attorney general did not abuse prosecutorial discretion in denying the Defendant's application for pretrial diversion. Specifically, the Defendant contends that because the assistant district attorney general failed to (1) consider all of the relevant pretrial diversion factors, (2) identify the weight accorded to the positive and negative factors considered during the review of Defendant's application and (3) properly consider Defendant's amenability to correction using only relevant information, the trial judge should have granted certiorari. The State responds that the trial court properly denied the Defendant's petition for writ of certiorari, finding no abuse of prosecutorial discretion, because the assistant district attorney general considered all the relevant factors for pretrial diversion; he accorded weight to many of the factors and was not required to enumerate the weight he afforded each incident that informed his decision on each factor; and all facts the assistant district attorney general considered as relevant to the amenability to correction factor were appropriate.

Pursuant to Tennessee Code Annotated section 40-15-105(a)(1)(A), as it existed at the time of the alleged offenses, a district attorney general and a defendant could enter into an agreement to suspend prosecution of the defendant for a period not to exceed two years. To qualify for diversion, the defendant must meet three criteria: (1) he or she must not have previously been granted diversion; (2) he or she must not have a prior misdemeanor conviction for which a sentence of confinement was served or a prior felony within a five-year period after completing the sentence or probationary period for such conviction; and (3) he or she must not be presently charged with one of an enumerated list of offenses. T.C.A. § 40-15-105(a)(1)(B)(ii). A defendant eligible for consideration for pretrial diversion is not presumptively entitled to a grant of pretrial diversion. *State v. McKim*, 215 S.W.3d 781, 786 (Tenn. 2007) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)). The defendant has the burden of establishing that pretrial diversion is appropriate. *State v. Bell*, 69 S.W.3d 171, 179 (Tenn. 2002).

In applicable cases, Tennessee Code Annotated section 40-15-105(b)(3) conveys the discretion to grant or deny an application for pretrial diversion upon the district attorney general. The district attorney general's analysis must be conducted on a case-by-case basis. *State v. Markham*, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988). *See* T.C.A. § 40-15-105(b)(3). He or she must consider several factors when reviewing an application for pretrial diversion, including: the circumstances of the offense; the defendant's criminal record and social history; the physical and mental condition of the defendant; and the likelihood that

pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant. *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). "In determining whether to grant pretrial diversion, the district attorney general 'has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant.'" *McKim*, 215 S.W.3d at 786 (quoting *Bell*, 69 S.W.3d at 178).

If the district attorney general denies the application for pretrial diversion, "the factors upon which the denial is based must be clearly articulable and stated in the record." *McKim*, 215 S.W.3d at 787. The denial must be written and must list the evidence considered and discuss which factors were considered and the weight accorded to each. *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997). If the district attorney general denies the application, the defendant may seek review in the trial court by filing a petition for writ of certiorari pursuant to Tennessee Code Annotated section 40-15-105(b)(3).

The trial court may only review the evidence considered by the district attorney general, and the court's role is to determine whether the district attorney general abused his or her discretion. *Bell*, 69 S.W.3d at 177. The trial court may conduct a hearing only to resolve factual disputes raised by either the defendant or the district attorney general. *Id*. The trial court may not hear additional evidence not considered by the prosecutor. *Curry*, 988 S.W.2d at 157-58. The decision of the district attorney general to deny pretrial diversion is considered "presumptively correct." *Id*. The trial court cannot set aside the denial unless it finds a gross and patent abuse of discretion. *Hammersley*, 650 S.W.2d at 356. The trial court should examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence. *State v. Yancey*, 69 S.W.3d 553, 559 (Tenn. 2002). A district attorney general's failure to consider and articulate all relevant factors in denying the application may constitute an abuse of discretion. *McKim*, 215 S.W.3d at 787 (citing *Bell*, 69 S.W.3d at 178; *Curry*, 988 S.W.2d at 159). The underlying issue that this Court must determine on appeal is whether, as a matter of law, the district attorney general abused his or her discretion in denying pretrial diversion. *State v. Carr*, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993).

*Assistant District Attorney's Denial of Pretrial Diversion*

Turning to the instant case, it appears that the assistant district attorney general considered all the relevant *Hammersley* factors when determining the Defendant's eligibility for pretrial diversion. In his response to the Defendant's application for pretrial diversion, the assistant district attorney general set out each factor in bold heading and listed all the items he considered applicable to said factors. The assistant district attorney general is not

required to assign a percentage weight to each item within a given factor, as long as all the factors are considered and weighed.

Addressing the Defendant's application for pretrial diversion, the assistant district attorney general considered the circumstances of the offense, as outlined above, and listed them in great detail, but he did not specifically assign weight to this factor. However, in a different section of the assistant district attorney general's denial response, the amenability to correction, the assistant district attorney general noted that the Defendant did not bury the dead horses when he was initially asked, and he cited the fact that the Defendant maintained and vocalized to others that he had done nothing wrong. This suggests that while the assistant district attorney general did not state in the "circumstances of the offense" section what particular weight he placed on this factor, by considering the circumstances of the offense in conjunction with the "amenability to correction" factor, it appears from the record that he afforded some negative weight to the circumstances of the offense.

The assistant district attorney general specifically placed great weight on the amenability to correction factor. According to the assistant district attorney general, "the Defendant has displayed an unwillingness to abide by the rules and regulations until he is forced to, and sometimes not even then." In reaching this conclusion, the assistant district attorney general relied on the following facts: a civil lawsuit instigated by Exxon against the Defendant; numerous violations with the Tennessee Department of Environment and Conservation (TDEC), the Tennessee Department of Agriculture, and the Tennessee Highway Patrol; a letter from a representative at TDEC, Elwin Hannah, wherein Mr. Hannah stated that he did not believe the Defendant was amenable to correction; and the Defendant's unwillingness to cooperate in the instant criminal case. Regarding the instant criminal case, the assistant district attorney general noted that the Defendant did not remove the dead horses as requested until the Chief Investigator, Herb Rowland, threatened to arrest him. Overall, the assistant district attorney general concluded that this factor weighed against the Defendant as his "interactive history with multiple State agencies and private organizations display[ed] a lack of respect for rules, regulations, and laws." The assistant district attorney general explained that the Defendant's negative history suggested that because the Defendant had not displayed an amenability to correction in the past, the assistant district attorney general had no reason to believe that the Defendant was amenable to correction at the present time. Finally, the assistant district attorney general stated that because the Defendant did not acknowledge any wrongdoing, "efforts to ameliorate his behavior or attitude will be moot," and he expressed concern that the Defendant would become a repeat offender of the same crime.

Regarding the Defendant's social history and health, the assistant district attorney general considered the following facts: the Defendant was a 54-year old married man in

apparent good health and had no children; he graduated from David Lipscomb University in 1978; he was a long-time resident of Warren County; he had no record of alcohol or drug abuse and no mental health issues; and he had no criminal record. The assistant district attorney general placed significant weight on this factor and noted that the facts therein weighed favorably in consideration for pretrial diversion.

Next, the assistant district attorney general considered how granting the Defendant pretrial diversion would serve the interests of the public and the defendant. He placed significant weight on this factor and concluded that "the interests of justice would be better served if the Defendant took responsibility for his actions and is held accountable." The assistant district attorney general stated that he had received letters from people in the community in support of the Defendant but that he had also been approached in the street and had received phone calls from concerned "citizens who have expressed that the District Attorney General's Office should not turn a blind eye to what the Defendant did simply because of who he is." While a grant of pretrial diversion would be immediately beneficial to the Defendant, the assistant district attorney general stated his belief that granting the Defendant diversion at this time would have potentially negative consequences in the future. The assistant district attorney general explained that because the Defendant had refused to give up his remaining horses, unless he was "held accountable for his actions and his animal care practices d[id] not change either by choice or by force, he w[ould] find himself again facing troubles."

In assessing the deterrent effect that pretrial diversion would have on the Defendant and others, the assistant district attorney general concluded that granting pretrial diversion "would serve a crippling blow to the concept of general deterrence." The assistant district attorney general explained that the 31st Judicial District has taken a strong stance against animal abuse and expressed concern that declining to prosecute animal abuse cases would send a message to others in the district that harmful treatment of animals is an act that will not be scrutinized. Regarding the deterrent effect pretrial diversion would have on the Defendant, the assistant district attorney general explained that granting pretrial diversion to the Defendant would not deter him, "but would actually bolster his apparent belief that he is above the law and is not subject to the same consequences as others." The assistant district attorney general also explained that the Defendant's "refusal to admit any wrongdoing negated the concept of deterrence."

The assistant district attorney general stated in his response that he did not believe that granting the Defendant diversion would serve the ends of justice, and he placed great weight on this factor. Specifically, the assistant district attorney general explained that "the ends of justice cannot be achieved when the Defendant steadfastly refuses to accept responsibility for his actions, shows no contrition, and instead relies solely upon his reputation in an effort

to obtain favored treatment." Because the Defendant refused to relinquish the numerous horses still in his possession and no mechanism had been put in place to prevent further troubles relating to the horses still in his possession, a grant of diversion "would be tantamount to a dismissal."

There are several places within the assistant district attorney general's denial response where he noted that the Defendant failed to admit any wrongdoing and that this weighed against granting him pretrial diversion. While this court understands the concern supplied by the assistant district attorney general that the Defendant admitted to no wrongdoing whatsoever, we feel constrained to emphasize that the law is clear that a confession is not a prerequisite to obtaining pretrial diversion. *See State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986); *State v. Dewey L. Clark*, No. 03C01–9706–CR–00227, 1998 WL 397370, at *3 (Tenn. Crim. App. at Knoxville, July 16, 1998). However, there is no abuse of discretion in the instant case because this basis was not the assistant district attorney general's sole reason for denying diversion.

### *Trial Court's Order Affirming Denial*

*State v. Curry* requires a trial court, in order to determine whether the district attorney general has abused his or her discretion, to examine whether the district attorney general considered all of the relevant factors and whether substantial evidence existed to support the district attorney general's denial of diversion. 988 SW.2d at 158. While the assistant district attorney general did not assign specific weight to all of the factors he considered, it is clear from reading the entirety of the response that he carefully weighed and considered these factors. He clearly discussed the factors weighing against the Defendant and why those factors outweighed factors in favor of diversion. As previously stated, a denial of the application must be in writing and must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor and of why unfavorable factors outweigh favorable ones. *Pinkham*, 955 S.W.2d at 960; *Curry*, 988 S.W.2d at 157.

The trial court's finding herein necessarily implies that the assistant district attorney general considered all the relevant factors and that substantial evidence existed to support his denial of diversion. The Defendant is not entitled to relief on this issue. We conclude that the trial court did not commit error in finding that the assistant district attorney general substantially complied with these requirements and that he did not abuse his discretion in his denial.

**CONCLUSION**

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
THOMAS T.  WOODALL, JUDGE