# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 10, 2011 Session

## STATE OF TENNESSEE v. ALLISON ELIZABETH MCLEAN

### Extraordinary Appeal from the Circuit Court for Williamson County
### No. II-CR095196      Timothy L. Easter, Judge

---

### No. M2011-00916-CCA-R10-CD - Filed February 15, 2012

---

In this extraordinary appeal, the Defendant, Allison Elizabeth McLean, appeals the Williamson County Circuit Court's order affirming the Assistant District Attorney's ("ADA") denial of pretrial diversion and the trial court's refusal to grant an interlocutory appeal of it's denial of her pretrial diversion request. On appeal, the Defendant argues that (1) the trial court erred in denying the Defendant's petition for writ of certiorari because the Assistant District Attorney ("ADA") abused her discretion by (a) failing to support her decision with "substantial evidence;" (b) failing to consider and give proper weight to the Defendant's amenability to correction; (c) giving weight to the circumstances of the case and the need for deterrence without supporting it with evidence; (d) considering improperly the victim's age to "enhance" the circumstances of the offense; and (e) giving "little or no weight" to the Defendant's lack of criminal record and her eight-year marriage; and (2) the trial court erred in denying the Defendant's application for interlocutory appeal. After a thorough review of the record and relevant authorities, we conclude that the trial court properly affirmed the ADA's denial of pretrial diversion. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Russell F. Thomas, Nashville, Tennessee, for the appellant, Allison Elizabeth McLean.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Kim Helper, District Attorney General; Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

The underlying undisputed facts of the case, as stated in the ADA's denial of the Defendant's application for pretrial diversion, are as follows:

> On June 11, 2010, [the Defendant], a teacher at The Academy at Heritage Commons daycare facility, was supervising seven (7) children between the ages of twelve (12) to eighteen (18) months of age. [The victim], [a] sixteen month old [child], was in [the Defendant's] classroom.[1] [The victim] cried for her blanket which is normally kept in a cubby. [The Defendant] allowed her to hold the blanket for a while to calm her. [The Defendant] was to take the toddlers to "water play" outside. As such, [the Defendant] began checking and, if necessary, changing the children's diapers, changing the children into their swimsuits and water shoes as well as collecting the "water play" supplies. These activities were captured on video tape, which was made part of the case file provided to this office.
>
> At the beginning of the tape, [the Defendant] left one child unattended on the changing table while she crossed the room to where other children were playing. The child remained unattended for several moments. While unattended that child, sat up, moved around and played with nearby items. Luckily, the child did not fall off of the changing table. [The Defendant] returned, finished changing the child and began packing bags. Children began to line up at the door. [The Defendant] took [the victim's] blanket and returned it to her cubby, across the room from the exit door, which upset [the victim]. She stood beneath the cubby and cried. [The Defendant] walked over and grabbed [the victim's] arm and dragged her toward the door. [The victim's] body lifted off the floor and twisted before [the Defendant] lifted her up underneath both arms and carried her to the door. [The victim] then moved away from the door while [the Defendant] tended to other children in the play area. [The Defendant] picked her up in a cradle position and walked another toddler by the hand to the door. [The victim] and another toddler moved away from the door. While carrying another toddler, [the Defendant] walked over to [the victim] and again grabbed her by her arm, jerking her toward the door.

[1] To protect the identity of the minor victim, she will be referred to herein solely as "the victim", as is customary in this Court.

2

[The Defendant] dragged her, while her feet were off the floor, all the way across the room from the cubbies to the door. [The Defendant] walked right past one of the other children that had left the door area to return to the table. Back at the door, [the Defendant] would not let go of [the victim's] arm as she flailed to be let go. When the door opened, all of the children exited and [the Defendant] picked up [the victim] and carried her out . . . .

[The victim's] mother[] witnessed the entire incident via the streaming video webcam setup in the daycare room that she had accessed via the internet. She immediately retrieved [the victim] from the daycare facility. Following the incident, the daycare reviewed the recorded footage and fired [the Defendant].

According to [the victim's mother], [the victim] was in pain and unable to use her arm normally. She took [the victim] to see Dr. Loshe at Centennial Pediatrics. Dr. Loshe diagnosed [the victim] with an aggressive case of nursemaid's elbow, a subluxation of the elbow. According to Dr. Loshe, nursemaid['s] elbow, [] a common injury in children, [caused the victim to cease using her arm, and the] injury was serious due to the amount of pain [experienced by the victim]. Typically, pain subsides and normal range of motion returns once the elbow is returned to its proper position. However, [the victim] suffered ligament damage. As such, her pain continued and her range of motion was limited even after the elbow returned to the proper position. According to [the victim's mother], it took two weeks or more before [the victim] would use her arm to pick up things. Dr. Loshe stated that would be consistent with the history provided. Dr. Loshe further stated that the history provided and the symptoms that manifested would be considered abuse.

A Williamson County Grand Jury indicted the Defendant for one count of child abuse as codified in Tennessee Code Annotated section 39-15-401(a), a Class D felony, and, in the alternative, one count of child abuse or child neglect as codified in section 39-15-401(b), a Class E felony. The Defendant then sent a letter to the ADA that included her application for pretrial diversion and supporting documentation. In a detailed letter, the ADA denied the Defendant's application for pretrial diversion. In the letter, the ADA discussed the factors upon which she based her decision, specifically the circumstances of the offense, the Defendant's criminal record, the Defendant's social history, the Defendant's physical and mental condition, the Defendant's amenability to correction, and deterrence.

Regarding the circumstances of the offense, the ADA wrote that "[t]he State places great weight on the circumstances of the offense," writing that "[t]he age of the victim and

the protracted period of impairment of the arm increase the severity of the offense." The ADA determined that the Defendant "violated a position of private trust . . . she had a duty to watch out for the victim while she was in her care." The ADA supported her decision, stating that "[t]he violation is exacerbated by the fact that [the Defendant] is a certified teacher with a degree in education . . . [s]he has received much more training than that offered by the daycare facility . . . her training and experience provided [the Defendant] with the tools to effectively handle the situation."

Regarding her criminal record, the ADA acknowledged that the Defendant did not have a criminal record. She however determined that this factor did not outweigh the other factors in this case. The ADA stated that "[t]his factor weighs in favor of pre-trial diversion; however, the State gives it little weight in that a lack of criminal record is a pre-requisite for eligibility and all qualified offenders have no criminal record."

The ADA determined that "the [D]efendant's social history weighs in favor of pre-trial diversion." The ADA noted that the Defendant had a good work history, provided a list of personal references and a list of organizational membership, and had a positive educational history. The ADA stated, however, that the "majority of references provided w[]ere friends of the family and knew the [D]efendant as a child or teen. Most of the personal references contacted by this office have had limited contact with the [D]efendant in her adult years." Although none of the references have been in "close contact with [the Defendant] on a regular basis" and have not "observe[d] how she lives her life on a daily basis[,]" all of the references contacted gave "very positive recommendations." Regarding the Defendant's educational history, the ADA stated that "the State is of the opinion that someone with her education and training would be held to a higher standard under these circumstances."

Regarding the Defendant's physical and mental condition, the ADA said that the medical records confirm that the Defendant suffers from fibromyalgia and diabetes. The records also show a history of depression and anxiety. Psychiatric and therapy records show that the Defendant had been in treatment for her depression and anxiety since at least 2008. The ADA notes that, during the Defendant's teaching years, clinic notes indicate that the Defendant was "overwhelmed" or "highly stressed" while at work "because of dealing with her students [sic] behavioral problems." The ADA said that "[i]t is concerning to the State that despite several years of therapy and medications, the daycare facility was not informed of her anxiety issues. Her information sheet merely mentions her physical aliments." As a result, the ADA categorized this factor as "neutral."

Regarding the Defendant's amenability to correction and deterrence, the ADA stated that "[t]he State is concerned that the [D]efendant would act the same way under the same

4

circumstances." Although the ADA found that the Defendant "express[ed] remorse and indicate[d] an awareness," which shows she is "amenable to correction," she said that "granting pre-trial diversion . . . would not serve the public interest in this case." She stated that the need for deterrence "may be considered when determining whether pre-trial diversion would serve the ends of justice." She concluded that "[g]ranting pre-trial diversion would undermine the seriousness of [the Defendant's] actions and convey a message that no consequences would result from such behavior."

The Defendant filed a petition for writ of certiorari with the trial court, claiming that the ADA abused her discretion when she denied the request for pretrial diversion. The trial court held a hearing on the matter, wherein defense counsel argued that "the facts and evidence considered by the State and the case law examining the appropriate use of those factors do not support those being an appropriate denial in this case." Defense counsel discussed the factors considered by the ADA, citing case law and concluding that the evidence did not support the weight given to the factors by the ADA. Defense counsel argued,

> The factors alone are not magic words that the State can simply put in a document and meet their burden. The case law requires more than that. The case law requires that there be [substantial][2] evidence to support the denial of pretrial diversion, and the court can look to whether the prosecutor gave proper or improper weight to certain factors or whether there is not substantial evidence to support those factors.

In response, the ADA stated that she properly considered all the relevant factors, and "there is substantial evidence in the record to show that [the Defendant] should not be granted pretrial diversion." She further responded that "case law does state that the circumstances of the offense may be used alone to deny diversion. Here the State did more than just rely upon the circumstances of the offense." The ADA argued that defense counsel's "memorandum basically ask[ed] the Court to substitute his judgment for the State's judgment." After hearing the arguments, the trial court affirmed the ADA's decision, finding that she did not abuse her discretion.

The Defendant subsequently filed an application for permission to seek interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which the trial court denied. The Defendant filed an application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, and the State responded to this

---

[2] As pointed out in the Defendant's brief, the court reporter recorded "circumstantial" rather than "substantial" in this portion of the hearing transcript.

5

application. This Court then entered an order granting the Defendant's application for an extraordinary appeal in this case.

## II. Analysis

The Defendant argues on appeal that: (1) the trial court erred in denying the Defendant's petition for writ of certiorari because the ADA abused her discretion by (a) failing to support her decision with "substantial evidence;" (b) failing to consider and give proper weight to her amenability to correction; (c) giving weight to the circumstances of the case and the need for deterrence without supporting it with evidence; (d) improperly considering the victim's age to "enhance" the circumstances of the offense; and (e) giving "little or no weight" to the Defendant's lack of criminal record and her eight-year marriage; and (2) the trial court erred in denying the Defendant's application for interlocutory appeal. The State counters that the ADA properly considered and weighed the relevant factors, and substantial evidence in the record supports the denial of the Defendant's application for pretrial diversion.

The pretrial diversion statute allows the State to suspend the prosecution of an eligible defendant for a period of up to two years. *See* T.C.A. § 40-15-105(a)(1) (2006). A defendant is statutorily eligible for pretrial diversion if the defendant: (1) has not previously been granted pretrial diversion; (2) does not have a disqualifying prior conviction; (3) and is not seeking pretrial diversion for a class A felony, a class B felony, certain class C felonies, a sexual offense, driving under the influence, or vehicular assault. *Id.* at (a)(1)(B)(i).

Nonetheless, statutory eligibility for pretrial diversion does not entitle a defendant to diversion. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999). Rather, the State has the sole discretion to determine whether to grant pretrial diversion to a defendant who meets the strict statutory requirements. T.C.A. § 40-15-105(b)(3) (2006); *State v. Pinkham,* 955 S.W.2d 956, 959 (Tenn. 1997). The State must focus on the defendant's amenability to correction and consider any factors which demonstrate the defendant's propensity to become a repeat offender. *State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). These factors include: (1) the circumstances of the offense; (2) the defendant's criminal record; (3) the defendant's social history; (4) where appropriate, the defendant's physical and mental condition; (5) the likelihood pretrial diversion will serve the ends of justice; and (6) the best interest of both the public and the defendant. *Hammersley*, 650 S.W.2d at 355. The State may also consider the need for general deterrence. *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007).

If pretrial diversion is denied, the denial must be in writing, listing and discussing the various factors considered and the weight attributed to each factor. *Curry*, 988 S.W.2d at

6

157. Failure to consider and articulate relevant factors will constitute an abuse of discretion. *State v. Bell*, 69 S.W.3d 171, 178 (Tenn. 2002). Additionally, the State must avoid relying upon irrelevant factors when denying diversion. *Id.*

A defendant may appeal to the trial court for a writ of certiorari, if an application for pretrial diversion is denied, to determine whether the prosecution abused its prosecutorial discretion. T.C.A § 40-15-105(b)(3) (2006). In reviewing the prosecutor's decision, the trial court must view the decision of the prosecutor as "presumptively correct and it should only be set aside on the basis of patent or gross abuse of prosecutorial discretion." *State v. Watkins*, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980). The discretion to grant or deny pretrial diversion rests with the prosecution rather than the trial court. *Bell*, 69 S.W.3d at 179. The trial court must consider only the evidence considered by the prosecution and conduct a hearing only to resolve factual disputes concerning the application. *Curry*, 988 S.W.2d at 157-58. The trial court may not reweigh the evidence or substitute its view for that of the prosecutor. *Bell*, 69 S.W.3d at 179. Before the trial judge can find an abuse of discretion, the record must show an absence of any substantial evidence to support the refusal of the prosecution to enter into a memorandum of understanding. *Watkins*, 607 S.W.2d at 488.

If the trial court does not find an abuse of discretion and affirms the prosecutor's denial of the application for pretrial diversion, the defendant may then seek an interlocutory review in this Court. Tenn. R. App. P. 9, 10. On review, this Court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." *Bell*, 69 S.W.3d at 177. "However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." *State v. Carr*, 861 S.W.2d 850, 856 (Tenn. Crim. App.1993) (citations omitted). Accordingly, in a case where the facts are undisputed, this Court must determine whether the prosecutor abused his or her discretion in denying the defendant's application for pretrial diversion. *Id*. This Court must determine whether the trial court's decision is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

### 1. Petition for Writ of Certiorari

In the case under submission, the trial court, when it reviewed the ADA's decision to deny the Defendant's application for pretrial diversion, made the following findings:

> The Assistant District Attorney examined and considered all the relevant factors. Furthermore she discussed in writing all of the relevant factors that she considered and the weight she attributed to each factor. The decision of

7

the prosecutor to grant or deny pretrial diversion is presumptively correct and will not be set aside absent abuse of discretion. [citation omitted]. A certiorari review by this Court requires a review of the method used by the prosecution, but not the intrinsic correctness of the prosecutor's denial decision. [citation omitted].

Likewise, we also find in our review of the record that the ADA listed and discussed the relevant factors in her written denial of the Defendant's application for pretrial diversion.

### A. "Substantial Evidence" to Support Denial of Pretrial Diversion

In her appeal, the Defendant first generally argues that the ADA did not base her denial on facts supported by substantial evidence in the record. *See Yancey*, 69 S.W.3d at 559 ("[T]he trial court should examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence." The Defendant argues that the "Order entered by the Trial Court, demonstrate[s] that the Trial Court did not undergo an analysis of whether there was substantial evidence overall . . . sufficient to support the denial of diversion."

In our review of the denial of pretrial diversion, we must determine whether the ADA abused her discretion. *Bell*, 69 S.W.3d at 179. After reviewing the record, we conclude that the ADA's evaluation of the relevant factors was supported by substantial evidence. In her letter denying pretrial diversion, the ADA listed each factor, explained her decision on each factor, and used specific examples of the Defendant's background and actions as related to the case. Therefore, to address the general argument by the Defendant that the ADA did not support her decision with substantial evidence, we conclude that, as a whole, the ADA supported her decision with substantial evidence from the record in her consideration of the relevant factors. Accordingly, the ADA did not abuse her discretion, and the Defendant is not entitled to relief on this issue.

### B. ADA's Focus on the Defendant's Amenability to Correction

Second, the Defendant contends that the ADA did not "focus on" and gave little weight to the Defendant's amenability to correction. Specifically, the Defendant asserts that the ADA spent "only three sentences of a five page document discussing [the Defendant's] amenability to correction," which the Defendant claims "clearly demonstrated that [the ADA] did not focus on this factor." In addition, the Defendant argues that the ADA failed to focus on this factor because, within her discussion of the Defendant's amenability to correction, the ADA mentioned that pretrial diversion "would not serve the public interest in this case"

8

and also discussed the consequences of "possible media coverage." Further, the Defendant asserts that the ADA found that the Defendant was amenable to correction and, as a result, "giving such short shrift to the finding that [the Defendant] is amenable to correction in favor of the circumstance of the case and the need for deterrence is an abuse of discretion." The State counters that the ADA "properly considered and weighed the [D]efendant's amenability to correction." The State explains that "[a]lthough [the ADA] found that the [D]efendant is amenable to correction, that finding was outweighed by the concern that the [D]efendant 'would act the same way under the same circumstances.'"

We conclude that the ADA fully considered the Defendant's amenability to correction. Although the Defendant may disagree with the ADA's finding that the need for deterrence, due to "other incidents of the charged offense are increasingly present in the community and incidents of this nature have received substantial publicity beyond that normally expected in a typical case," outweighed the ADA's determination that the Defendant would be amenable to correction, we conclude that the ADA did not abuse her discretion by finding that the Defendant was likely to reoffend and that this factor outweighed the Defendant's amenability to correction. *See Carr*, 861 S .W.2d at 857 ("[T]he prosecutor considered all relevant factors and concluded that the significance of the circumstances surrounding the defendant's criminal conduct and the deterrent effect . . .outweighed the other factors. Reliance upon these two factors was authorized in *Hammersley* and they have justified the denial of pretrial diversion in previous cases." (citation omitted)). In her denial letter, the ADA noted that the Defendant "does express remorse and indicated an awareness that the situation should have been handled differently." The ADA, however, properly weighed the other relevant factors and determined those factors outweighed the Defendant's amenability to correction. The ADA did not abuse her discretion, and the Defendant is not entitled to relief on these issues.

### C. Circumstances of the Offense and Need for Deterrence

Next, the Defendant argues that the ADA abused her discretion because the weight given to the circumstances of the offense and the need for deterrence were not supported by the evidence. The Defendant further asserts that these factors "'are not of such overwhelming significance' that they trump all of the other positive factors, including most importantly, the fact that [the Defendant] has been found to be amenable to correction." *See State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993) ("[W]hile the circumstances of the case and the need for deterrence may be considered as two of the many factors, they cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" (citation omitted)). Citing *Curry*, the Defendant first contends that the ADA's "placement of great weight" on the circumstances of the offense is "simply not supported by the evidence." *See Curry*, 988 S.W.2d at 159 ("[T]he prosecutor's denial letter concentrated solely upon the circumstances of the offense and,

9

arguably, a veiled consideration of deterrence. There was no apparent consideration given to the defendant's lack of a criminal record, favorable social history, and obvious amenability to correction.").

We note, initially, that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." *Curry*, 988 S.W.2d at 158 (citing *Washington*, 866 S.W.2d at 951). In this case, the ADA specifically determined that the circumstances of the offense, the need for deterrence, and the ends of justice and the interests of the public outweighed the Defendant's amenability to correction, positive social history, lack of criminal history, and her physical and mental conditions. In her letter of denial, the ADA listed each of the relevant factors, supporting each with facts from the case and background information on the Defendant. Specifically, the ADA placed "great weight" on the circumstances of the offense, considering the young age of the victim, the protracted period of pain and impairment suffered by the victim, the Defendant's previous work and educational experience, and the Defendant's violation of private trust. The ADA noted that the Defendant was highly trained in child care and was a certified teacher who had previously worked in the public school system. The ADA noted that "[the Defendant's] training and experience provided [the Defendant] with the tools to effectively handle the situation." Further, the ADA properly considered the evidence contained on the daycare's surveillance video, which details the Defendant's actions and behavior. Therefore, the ADA properly considered and weighed the relevant factors in this case, and we conclude that the denial of pretrial diversion was appropriate and supported by substantial evidence.

The Defendant also argues that substantial evidence does not support the weight afforded to the need for deterrence. The Defendant cites *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), for its list of five factors to consider when analyzing whether deterrence alone could justify a denial of probation. *See also Hammersley*, 650 S.W.2d at 353-55 ("[D]eterrence should be considered in pretrial diversion cases in the same manner as we have approved for consideration in probation cases."). The Defendant uses *Hooper* and the factors listed therein to support his proposition that "deterrence is not a significant enough factor to justify the denial of pretrial diversion." The Defendant, however, misplaces his reliance in *Hooper* because, in the case at hand, the ADA did not rely on deterrence alone in her denial of pretrial diversion to the Defendant. The Tennessee Supreme Court has stated that the State may consider the need for general deterrence in its determination of pretrial diversion. *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007). In her letter, the ADA explained that general deterrence was necessary "because other incidents of the charged offense are increasingly present in the community and incidents of this nature have received substantial publicity beyond that normally expected in a typical case." The ADA further explained that "[d]aycare employees, teachers and all who are charged with car[ing] for

young children should not be left with the impression that there are no consequences for behavior that results in injury to a child." The ADA concluded that "[g]ranting pre-trial diversion would undermine the seriousness of [the Defendant's] actions and convey a message that no consequences would result from such behavior." In light of the ADA's letter, she properly considered the need for deterrence in this case, and supported her decision with substantial evidence. Therefore, the Defendant is not entitled to relief on this issue.

### D. Consideration of Victim's Age

The Defendant contends that the ADA improperly considered the victim's age as an "enhancement" factor in her decision denying pretrial diversion when she stated, "[t]he age of the victim and the protracted period of impairment of her arm increase the severity of the offense." The Defendant argues that the ADA substituted her own opinion of the "seriousness" of the crime, which "is not grounds for denial of diversion." The Defendant cites *State v. McKim* to support his contention, and states that, in that case, the Tennessee Supreme Court reversed a denial of pretrial diversion because "the prosecutor substituted his own opinion of what legislative policy should be as to what offenses are too serious to be divertable." 215 S.W.3d 781, 788 (Tenn. 2007) (holding "[t]he prosecutor's consideration of, and emphasis upon, an irrelevant factor so tainted his decision-making process as to constitute an abuse of discretion."). The situation in *McKim*, however, differs from the case at hand. In *McKim*, "the assistant district attorney general . . . focused not on the defendant's amenability to correction but rather on his own opinion of what should and should not be a divertible offense." *Id.* The Tennessee Supreme Court found that, "[i]n doing so, the assistant district attorney general considered a factor not relevant to this determination of whether to grant pretrial diversion . . . ." *Id.* In *McKim,* the prosecutor denied diversion based upon the commission of a specific crime, not because of the circumstances of the specific crime committed. In the current case, the ADA considered all of the relevant factors in her diversion determination, including the circumstances of the offense, the defendant's criminal record, her social history, her physical and mental condition, deterrence, and the best interest of both the public and the Defendant. The ADA noted the victim's age while considering all of the circumstances of the offense. Because of her age, the victim depended on the Defendant and others at the daycare facility to address her needs, care for her, and keep her safe while she remained in their care. As a result, the ADA properly considered the age of the victim when she addressed the circumstances of the offense. We conclude that the ADA adequately delineated her reasoning for the denial and did not abuse her discretion as a prosecutor. Thus, the Defendant is not entitled to relief.

### E. The Defendant's Criminal History and Marriage

The Defendant argues that the ADA "gave little or no weight" to her lack of a criminal

record, pointing out that the pretrial diversion statute does not require that an eligible defendant have no criminal record. In her letter, the ADA noted that the Defendant had no criminal record, which makes her eligible for diversion and "weighs in favor of pre-trial diversion." The ADA, however, further noted that "the State gives it little weight in that a lack of criminal record is a pre-requisite for eligibility and all qualified offenders have no criminal record." Therefore, the ADA stated, "[n]ot all eligible offenders are appropriate candidates for the largess of pre-trial diversion."

Tennessee Code Annotated section 40-15-105(a)(1)(B)(i)(b) states,

[A] "qualified defendant" means a defendant who meets each of the following requirements . . . [t]he defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for the prior conviction.

*Id.* Because no defendant eligible for pretrial diversion can have a significant criminal record, the ADA properly stated that this Defendant's lack of a criminal record does not weigh heavily in her determination. Therefore, the ADA correctly afforded "little weight" to the fact that the Defendant had no criminal record. The Defendant is not entitled to relief as to this issue.

Regarding the Defendant's eight-year marriage, the Defendant argues that the ADA's failure to consider the Defendant's marriage demonstrated that "the State's denial of diversion was not supported by substantial evidence." The Defendant relies on *State v. Daniel Shane Malone*, W2004-01125-CCA-R9-CD, 2005 WL 957103 (Tenn. Crim. App. Apr. 25, 2005), which reversed the judgment of the trial court because the prosecutor did not consider all of the relevant factors in his denial of pretrial diversion to the defendant. The Defendant in this case appears to cite *Daniel Shane Malone* to support her argument that the ADA should have considered her marriage as a positive factor and weighed it in favor of pretrial diversion for the Defendant. The State argues that the Defendant did not provide any information in her application for pretrial diversion regarding the importance of her marriage. The State notes that the "only notable references regarding [the Defendant's] marital status is an 'X' next to the 'married' box on the initial application for pretrial diversion, and her husband's name, . . . as well as the date of her marriage . . . ." Further, the State contends that "it is unclear what effect, if any, her marital status would have had." We agree with the State. The Defendant, first, misconstrues *Daniel Shane Malone* as analogous to her case. The outcome in that case was a direct result of the failure of the prosecutor to consider all relevant factors in his diversion determination. In this case, the ADA did consider all of the factors and appropriately weighed each in her decision to deny diversion. Further, regarding

the Defendant's marital status, the Defendant did not provide any information on her application highlighting the importance of her marriage. As a result, the ADA did not specifically mention the Defendant's marital status in her denial letter. Although it does not relieve the prosecutor of the obligation of examining all relevant factors, a defendant bears the burden of establishing suitability for diversion. *State v. Bell*, 69 S.W.3d 171, 177 (Tenn. 2002). The Defendant did not provide such information in her application, so the ADA in the present case did not consider it negatively or positively in her diversion determination. We find that the ADA did consider all relevant factors, including all factors provided to her by the Defendant. Therefore, the ADA did not need to specifically consider the Defendant's marital status in her decision, and the Defendant is not entitled to relief as to this issue.

## 2. Application for Interlocutory Review

The Defendant argues that the trial court erroneously declined to grant her appellate review under Rule 9 of the Tennessee Rules of Appellate Procedure. In her argument, the Defendant simply states that this Court's grant of her extraordinary appeal, pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, "effectively mooted" this issue, which appears to serve as a waiver of review on this issue. We will, however, address the merits of the issue.

Rule 9 of the Tennessee Rules of Appellate Procedure states that, in the discretion of the trial court and appellate court, an interlocutory appeal may be granted after considering the following:

> (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment.

In Defense counsel's argument on the issue to the trial court, it cited the issues of "irreparable injury" and the need to "prevent needless, expensive protracted litigation" as its basis for seeking interlocutory appeal. Defense counsel pointed the trial court to *State v. McKim* and that case's discussion of when it is appropriate to grant interlocutory appeal from

a denial of pretrial diversion. 215 S.W.3d at 781. Defense counsel quoted, "[i]n the unique context of pretrial diversion, however, the courts to which application for interlocutory appeal is made should construe liberally the defendant's alleged grounds," supporting its contention that the trial court should grant interlocutory appeal. *Id.* at 791. After hearing the argument, the trial court referred the Defendant to his order denying the Defendant's Writ of Certiorari of the State's denial of pretrial diversion. The trial court further stated that it reviewed the specific reasons for granting a Rule 9 interlocutory appeal, and it found that none of the reasons raised by the rule were applicable in this case and denied the request for Rule 9 appeal.

After review, this Court finds no abuse of discretion by the trial court in its decision. The Defendant does not show that she would suffer irreparable injury, that needless, expensive, and protracted litigation would result, or that there exists a need to develop a uniform body of law. As the trial court stated, it does not appear that any of these factors are present in this case, and the trial court correctly denied the Defendant's Rule 9 application. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Upon review of the record and relevant authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

14